BOROUGH OF KENILWORTH, PROSECUTOR, v. BOARD OF EQUALIZATION OF TAXES ET AL.

Argued February 17, 1909—Decided April 22, 1909.

1. Where a borough consents to the confirmation of the assessment of ratables as made by its assessor before the county board of taxation, and such assessment is thereafter confirmed, no controversy exists; and the borough cannot be said to be aggrieved by the action of the county board so as to justify an appeal to the state board.

2. This court will not review the action of the state board of equalization in dismissing an appeal where the action appealed from was consented to by the petitioner.

On writ of *certiorari* directed to the state board of equalization of taxes et al.

Before Justices REED, TRENCHARD and MINTURN.

For the prosecutor, *MacLear & Fort.*

For the county board, *William R. Codington.*

The opinion of the court was delivered by

MINTURN, J.   The assessor of the borough of Kenilworth having made his assessment, presented his duplicate in due time to the county board for revision and correction.   That board, in conjunction with the mayor of the borough, the assessor and other borough officials, conferred and the assessment was agreed upon as correct.   Thereafter a number of taxpayers, feeling themselves aggrieved by assessments against their properties, appealed to the county board for reductions, but before any action had been taken by that board the same appellants presented their claims to the state board of equalization of taxes, and succeeded, with the consent of the borough, according to the record here presented, and without any notice to the county board, in obtaining extensive and radical reductions.   Thus:

Mary L. Ash, whose real estate was assessed at $1,800, was reduced to $180.

Edward A. Lee, assessed at $1,750, reduced to $1,000.

John N. Jackson, assessed at $1,000, reduced to $300.

John T. Kanane, assessed at $1,600, reduced to $500.

Charles Frost, assessed at $4,800, reduced to $3,500.

Kenilworth Realty Corporation, assessed at $433,462, reduced to $183,832.

William McLean, assessed at $13,270, reduced to $6,300.

The effect of these reductions, aggregating over $270,000, was to reduce the original taxable assessment of real estate, as compiled by the borough assessor and confirmed by the county board, by about one-third.   Having thus practically given away its assets, and Lear like divided its kingdom, it

finds itself confronted by the threatening storm and tempests of financial embarrassment. In the language of its petition, as contained in this record, it finds itself "without necessary resources to carry on the business of its municipal affairs," and confronted with a condition which "would inevitably cause it to become bankrupt." Thus confronted, it presented a petition to the state board of equalization of taxes reciting these facts and praying that board "to review the action of the Union county board of taxation in affirming the erroneous total valuation of real estate within the borough and the consequent erroneous apportionment" of the borough's state school and county tax. The state board having dismissed the appeal, the matter is now here upon writ of *certiorari* intended to review that dismissal. The appeal is based upon section 10 of the act of 1906 (*Pamph. L., p.* 216), which authorizes the state board to review the action or determination of any county board. The difficulty, however, with the appeal is that there was no controversy before the county board to review, for the record here shows that the assessor's assessment was presented to the county board, and there, after full consideration, ratified and confirmed with the consent of the borough officials. Having thus consented to the confirmation of its own assessment by the county board, it is not perceived how the petitioner can be said to be "aggrieved," or that "any controversy" can be said to exist which can be the subject-matter for determination by the state board.

When, by consent of parties, the matter has been settled without the intervention of fraud or other nullifying element, it has been uniformly held that the maxim, *Consensus tollit errorem,* applies, and precludes further controversy, because *Interest Reipublica ut sit finis lilium. Br. Leg. Max.* 129. The act of 1905 creating the state board (*Pamph. L., p.* 123), and treating of a cognate subject, must be read in *pari materia* with the act of 1906, which by its seventh section limits the power of review by the state board to a "taxpayer feeling himself aggrieved" or to a "taxing district aggrieved by the action of the county board." It is not perceived how this borough can bring itself within the manifest meaning of

this legislation, for beyond peradventure, until by its benevolence it found itself in this dilemma, it urged no controversy, and it entered no appeal to the action of the county board in confirming this assessment. On the contrary, it indicated, as far as municipal assent by officials in such cases can indicate, that the assessment as fixed and confirmed by the county board met with its approval. With this *status* before us, and mindful of the fact that the adjustment of the assessments of the taxing district contemplated by this legislative act is necessary for the proper fiscal administration of state and county adjusted as they are on the basis of the original assessment, we are constrained to conclude that this assessment should not be disturbed. The impolicy of such intervention is adverted to and discussed in two cases in this court. *Ross* v. *Walton,* 34 *Vroom* 435, and *Colonial Trust Co.* v. *Scheffey,* 69 *Atl. Rep.* 455.

It is not necessary for the purpose of this adjudication to discuss the legality of the action of the state board in acting in the first instance upon the appeals which were pending undetermined before the county board. But we find no legislation applicable to either of these boards which authorizes such procedure. Not even the consent of the borough, as given in this instance, can suffice to confer jurisdiction upon a statutory tribunal erected as was this for a specific purpose with limited powers. *Cregar* v. *Lebanon,* 41 *Vroom* 598; *Cooley Const. Lim.* 199.

On the contrary, it is plain that the legislative intent was to confer upon the county board the power of hearing the appeal of the taxpayer or the taxpaying district in the first instance, and finally to authorize an appeal to the state board from the determination of the county board. *Pamph. L.* 1906, §§ 9, 10; *Pamph. L.* 1905, *ubi supra,* § 7.

Such power to hear appeals, in the first instance, was held by this court not to inhere in the state board of taxation, the predecessor of the present state board, and it is not apparent that the existing legislation has worked any change in that respect. *Cregar* v. *Lebanon, supra.*

VOL. XLIX.    20

Nor is it perceived that by dismissing this petition, after hearing the borough and the other taxing districts of the county, the state board violated any principle or rule of law, or invaded any fundamental legal right applicable to this borough. Such a consideration seems under our adjudications to afford the basis or test for the intervention of this court upon *certiorari*. *Elizabeth* v. *New Jersey Jockey Club*, 34 *Vroom* 515.

As was said by this court in *Colonial Trust Co.* v. *Scheffey*, *ubi supra:* "The legislative policy in the creation of these tribunals can be sustained by the courts and the public expense involved therein justified only by our refusing to allow discretionary writs, for the sole purpose of reviewing tax valuations where no legal principle is at stake."

For these reasons we conclude that the writ should be dismissed, with costs.