HUDSON COUNTY BOARD OF TAXATION.

CITY OF JERSEY CITY v. LOUIS F. BETTCHER.   (29 Cases)

CITY OF JERSEY CITY v. KATHERINE RYER.   (1 Case)

CITY OF JERSEY CITY v. JAMES X. WARREN.   (1 Case)

CITY OF JERSEY CITY v. ANTOINETTE LAURIA.   (2 Cases)

Decided November 15, 1943.

For the motions, *John Warren.*

For Jersey City, *Charles A. Rooney, Arthur C. Mullen* and *John F. Lynch.*

BY THE BOARD. · Applications have been made to the Hudson County Board of Taxation to dismiss 34 separate petitions of appeal from assessments against real property situate in the City of Jersey City upon the grounds that: (a) the City of Jersey City was without legal right to take such appeals, and (b) said petitions of appeal are not sufficient upon their face to confer jurisdiction upon the Hudson County Board of Taxation.

Hearings upon said applications were had before this Board on October 9th and October 12th, 1943, in the presence of Commissioners Ziegener, Donovan and Wilkens, Commissioners Rosenblum and Doherty having voluntarily disqualified themselves from participation. All of the applications hereunder were consolidated at such hearings, and all determinations of law and fact are applicable to each application.

Considerable testimony was produced at the hearings by the proponents of the applications. The City of Jersey City offered no testimony in its own behalf, relying as it did upon its position that the taxpayers' applications lack sufficiency in law. The pertinent facts do not appear to be in dispute and are supported principally by public records of the Hudson County Board of Taxation and the City of Jersey City.

On January 11th, 1943, the Jersey City assessor, in pursuance of the provisions of *R. S.* 54:4–35; *N. J. S. A.* 54:4–35, filed that taxing district's assessment list for the year 1943 with the Hudson County Board of Taxation. The proposed real property assessments for that year, as originally submitted by the city assessor, consisted of land, $188,237,551, buildings, $243,721,776, total, $431,959,327. Thereafter, as permitted by *R. S.* 54:4–47; *N. J. S. A.* 54:4–47, the county board revised and corrected the proposed tax lists, and by resolution of March 31st, 1943, decreased the proposed real estate assessments for the year 1943 by $95,816,335. This aggregate reduction represents the toal of 34,431 separate reductions granted to individual taxpayers, the board having corrected and revised each of their separate assessments in the performance of its duties. Jersey City's tax duplicate for 1943 was then certified, as revised, by the county board, and returned to the collector of the taxing district of Jersey City, and in July, 1943, final 1943 tax bills were forwarded to taxpayers upon the basis of the decreased assessments as revised by the county board.

Prior to the issuance of the final tax bills, and on May 18th, 1943, the Board of Commissioners of Jersey City passed a resolution in the following language:

*"Resolved,* that the Director of Revenue and Finance, or his deputy, be and they hereby are authorized and directed

to take such appeals from assessments or actions of the Hudson County Board of Taxation, which effected reductions in valuations of real or personal property in the City of Jersey City for the year 1943."

It is to be noted that this resolution was adopted subsequent to the delivery to the city collector of the certified tax lists as revised and corrected by the county board, and prior to the issuance of final 1943 tax bills by the taxing district.

Arthur Potterton, Director of Revenue and Finance and Assessor of the City of Jersey City, testified that Jersey City's 1943 tax rate, as estimated in the proposed budget, was $53.52 per thousand, but that the 1943 tax rate, as certified by the Hudson County Board of Taxation, was $57.45 per thousand. The difference between the estimated tax rate and the certified tax rate was occasioned by the revision downward of Jersey City's proposed assessments.

On February 24th, 1943, Jersey City's Board of Commissioners adopted the final 1943 budget by resolution which provided that said budget shall constitute "* * * an authorization of the amount of $10,167,130.89 for local purposes, and $6,766,273.94 for school purposes, to be raised by taxation * * *." In addition, that taxing district was authorized to raise county taxes for 1943 in the sum of $6,409,028.38 (exclusive of bank stock taxes) and $1,626,-954.90 for state school taxes for the same year. All of the taxes authorized to be raised were calculated on the basis of the decreased total of real estate ratables, as revised, and upon the increased tax rate of $57.45 per thousand, and not upon the proposed assessment aggregates and the estimated tax rate of $53.52 per thousand. Although the Director of Revenue and Finance of Jersey City, or his deputy, were authorized and directed to take appeals from the action of the county board revising 1943 real estate assessments downward, it is clear that no review was sought by Jersey City either by application for *certiorari* or by appeal to the State Board of Tax Appeals, but that the only attack against the county board's action was made by filing 34,431 petitions of appeal with the Hudson County Board of Taxation seeking increases in each one of those assessments, part of which

are the direct subject-matter of these applications. Each of the 34,431 petitions is identical in form and alleges an assessment, "at which assessment your petitioner (City of Jersey City) feels discriminated against for the reason that said assessment is below the true value of said property as of November 10th, 1942." Each petition concludes with the following prayer:

"Your petitioner therefore prays that the said assessment for the year 1943 be increased to the true value of the said property as of November 10, 1942, to wit: Land $......  Building $...... Total $......"

Among other things, the City of Jersey City urges that the county board has no power or jurisdiction to hear motions and that it has no right to extend its hearing beyond the value of property, the assessment of which is the subject-matter of appeal. This contention is without merit. All courts are empowered to determine the extent of their own jurisdiction, and this has been extended to *quasi*-judicial bodies. See *Oradell* v. *State Board of Tax Appeals,* 125 *N. J. L.* 37; 13 *Atl. Rep.* (2d) 479. We therefore turn to a consideration of the application upon the merits.

As heretofore noted, the City of Jersey City, prior to the filing of the subject appeals, prepared and delivered 1943 final tax bills and proceeded to make collections thereon. Those tax bills are admittedly predicated upon decreased realty assessments and an increased tax rate of $57.45 per thousand dollars of valuation.

Computation of the municipal tax rate does not involve the exercise of discretion by the county board. The rate is determined by mathematical calculation, and the result is reached on the one hand, by the sum of money authorized to be raised by taxation in the municipal budget and by state and county requirements, and on the other hand, by the aggregate ratables or assessments certified by the county board. Thus, an increase or decrease in ratables after final adoption of the budget will, of necessity, increase or decrease the tax rate in direct proportion.

Jersey City's 1943 assessments were revised downward, and certified and returned to that taxing district by April 1st.

The tax rate was fixed on April 9th by resolution of the county board. The tax bills were sent out in July. The 34,431 petitions, including the subject appeals, were filed shortly before August 15th, after taxpayers had been billed, and collections made, on the basis of the increased tax rate. By this procedure, Jersey City accepted the decreased assessments and increased tax rate without appeal, and set about collecting the sum authorized by its budget and county and state requirements.

Jersey City, by filing 34,431 appeals now seeks to raise its 1943 realty assessments from $336,142,992 to $431,959,327, an increase of $95,816,335. If successful, its taxpayers will become obligated to pay $5,504,648.45 in taxes in excess of the sum of money authorized to be raised by the Jersey City 1943 budget resolution.

Municipalities are prevented by law from arbitrary or indiscriminate levying of taxes. Taxpayers cannot be burdened by taxes in excess of the sum of money necessary for the operation of the municipality. The amount of taxes to be levied for municipal purposes is prescribed and limited by the budget resolution. This is in keeping with the provisions of *R. S.* 40:2-19; *N. J. S. A.* 40:2-19:

"The amount to be raised by taxes, as stated in the budget, shall be the amount to be raised by taxation for local purposes, other than schools (except as provided in section 40:2-20 of this title), in the case of a municipality, and for county purposes in the case of a county. The governing body of each county and municipality shall have power to assess, levy and collect taxes in support of any budget adopted pursuant to this chapter and for all other lawful purposes."

Upon adoption, it is the budget that constitutes an appropriation of the sums therein set forth as appropriations, and an authorization of the amount to be raised by taxation for the purposes of the municipality. *R. S.* 40:2-11; *N. J. S. A.* 40:2-11.

Jersey City's 1943 appropriations are now fixed by the budget. The tax rate of $57.45, levied as it is against all of the Jersey City ratables certified by the county board, will produce all of the money necessary to defray the expenses

of the city's operation under that budget. By filing its 34,431 appeals, Jersey City seeks an opportunity to create a theoretical surplus fund of $5,504,648.45. And this surplus is to be created not by the collection of revenues unanticipated at the time of the striking of the tax rate, but by taxation in a sum unauthorized by the budget. The authorization for the levying and collection of taxes is contained in the tax resolution appended to the budget. The attempted levy of more than $5,000,000 in additional taxes, not required for 1943 municipal operations, is contrary to law, and can only result in the creation of a surplus fund in a manner other than that contemplated by statute.

Against this, the city advances the argument that any excess taxes so levied and collected in 1943, will be treated as surplus cash and credited toward the reduction of taxes in the 1944 budget. The point is made that even though taxes are levied and collected in 1943 in excess of the sum required to operate the municipality in that year, the taxpayers will ultimately benefit because such surplus fund will be applied in 1944 in reduction of the amount required to be raised by taxes in that year. Thus, the city defends the propriety of its action by the result to be achieved in 1944.

But this argument overlooks and fails to satisfy the statutory requirement of *R. S.* 40:2–5; *N. J. S. A.* 40:2–5:

"*Annual Budget.* The governing body of each county and municipality shall adopt a budget *for each fiscal year.* The budget adopted for a county shall be designated 'county budget.' The budget adopted for a municipality shall be designated 'municipal budget.'"

An excessive and improper tax levy in 1943 will not be corrected by a compensating impropriety in 1944, for such procedure cannot be adopted without violating the foregoing requirement that municipal budgets be set up on an annual basis. Moreover, there is no assurance that Jersey City will appropriate its surplus tax moneys in reduction of 1944 taxes for it is not required by law to do so. It may collect these excess funds and maintain same as cash reserve without making any appropriation therefrom in the 1944 budget. This specific question was dealt with in *In re City Affairs Com-*

*mittee of Jersey City,* 129 *N. J. L.* 589; 30 *Atl. Rep.* (2*d*) 581, where, upon an application by a taxpayer to compel the inclusion of the municipality's entire cash surplus in reduction of taxes for the ensuing budget year, Mr. Chief Justice Brogan held that the failure of a local governing body to include its entire cash surplus in the budget is in accord with statutory provisions generally, and that the question rested in the discretion of the governing body.

In connection with the subject cases, Jersey City was aware of its position as early as April 9th, 1943, on which date the 1943 tax rate was certified by the county board. The municipal tax bills were not made up and delivered until July. During the interim, Jersey City could have appealed to the State Board of Tax Appeals from the action of the county board in revising its realty assessments downward. This remedy is provided by *R. S.* 54:2–35; *N. J. S. A.* 54:2–35, as follows:

"Any action or determination of a county board of taxation may be appealed for review to the state board of tax appeals under such rules and regulations as it may from time to time prescribe, and it may review such action and proceedings and give such judgment therein as it may think proper."

By this provision, there is made available the machinery for appeal from any action or determination of a county board. And this appellate procedure was adopted effectively in *Camden* v. *Camden Board of Taxation, N. J. Tax Reports* (1912-1934) 436, on an appeal from an analogous county board action revising assessments downward. Under that section, Jersey City could have appealed as well from the tax rate of $57.45 per thousand, as certified by the county board. *Park Ridge* v. *Board of Equalization (Supreme Court),* 86 *N. J. L.* 39; 90 *Atl. Rep.* 1019.

But the municipality apparently adopted the view that it would accept the revised assessments, without appeal, for it then proceeded to make up its 1943 tax bills on the basis of the decreased assessments and increased tax rate. It elected to collect its annual taxes in the sum required to be raised by its annual budget, based upon the county board's certified assessment lists.

The municipality was concerned with the collection of sufficient tax moneys to defray its annual operating expenses. The collection of those taxes was provided for by the increased tax rate. The municipality, prior to the issuance of the tax bills, could have adopted one of two procedures. It could have appealed to the state board from the decreased assessments and the increased tax rate, and, if successful, it would have been permitted to make up its tax bills on the basis of the higher assessments and lower tax rate. In the alternative, it could have accepted the county board's revised assessments, and made up its tax bills on the basis of the increased tax rate. In either event, Jersey City would have theoretically collected the amount of taxes required to be raised by its budget resolution, and no more. In the exercise of its judgment and discretion, the governing body saw fit to adopt the latter procedure. They are now without legal basis in their attempt to maintain a position whereby they will collect their taxes and still maintain the increased assessments.

By its action in issuing 1943 tax bills on the basis of the increased tax rate, the municipal officials elected, as far as municipal assent by officials in such cases can elect, that the assessments as fixed and confirmed by the county board met with their approval. Thus, their action constituted a waiver of the right of Jersey City to appeal. *Kenilworth* v. *Board of Equalization,* 78 *N. J. L.* 302; 72 *Atl. Rep.* 966; *affirmed (Court of Errors and Appeals),* 78 *N. J. L.* 439; 74 *Atl. Rep.* 480; *Hoboken* v. *Lamport & Holt Line, N. J. Tax Reports* (1934-1939) 398; *City of Garfield* v. *Hayden Chemical Corp., Id.* 738.

Fairness to the other municipalities in the county and the orderly administration of the tax laws require that a municipality should object promptly if it questions the certification by the county board of its assessment books and tax rate. Mindful of the fact that the adjustment of the assessments of the taxing districts contemplated by the legislative act is necessary for the proper fiscal administration of state and county taxes, adjusted as they are on the basis of the original assessments, we are of the opinion that the present Jersey City assessments, as revised downward, cannot now be disturbed.

Counsel for the taxpayers urges also that the county board is without jurisdiction to entertain a petition of appeal by a taxing district under the provisions of *R. S.* 54:3-21; *N. J. S. A.* 54:3-21, unless such petition is founded upon discrimination. In this connection, it is contended that all of the Jersey City appeals, including the subject appeals, are filed solely for the purpose of increasing each assessment. These appeals, it is argued, are not based upon discrimination and therefore the filing of same is without authority in law. We are in accord with this view.

Jersey City's petitions of appeal were filed with the Hudson County Board of Taxation immediately prior to August 15th, 1943, the statutory deadline for filing of tax appeals. This procedure is authorized and limited by *R. S.* 54:3-21; *N. J. S. A.* 54:3-21, as follows:

"A taxpayer feeling aggrieved by the assessed valuation of his property, or feeling that he is discriminated against by the assessed valuation of other property in the county, or a taxing district which may feel discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county, may on or before August fifteenth appeal to the county board of taxation by filing with it a petition of appeal. A copy thereof shall also be filed with the clerk or attorney of the taxing district, setting forth the cause of complaint, the nature and location of the assessed property and the relief sought. The petition shall be signed and sworn to by the petitioner or his agent, and shall be in such form and contain such further information as may be from time to time prescribed by rule of the board, for the better understanding and determination of the appeal."

By this section, the legislature has distinguished the jurisdiction of county boards with respect to appeals of taxpayers and taxing districts. In the case of taxpayers, appeals to the county board are permitted when the taxpayer is either "aggrieved by the assessed valuation of his property," or is "discriminated against by the assessed valuation of other property in the county." With respect to a taxing district, the right of appeal to the county board is limited to those cases

wherein the taxing district feels "discriminated against by the assessed valuation of property in the taxing district, or by the assessed valuation of property in another taxing district in the county." Jurisdiction with respect to taxing districts is thus limited to cases of discrimination.

The Hudson County Board of Taxation is a statutory body and as such, is limited strictly to the authority bestowed upon it by statute. *Washington Township* v. *Mercer County Board of Taxation,* 85 *N. J. L.* 547; 89 *Atl. Rep.* 1028.

The language of the petitions is unmistakable in meaning and purpose. In each of the 34,431 cases, Jersey City maintains that it is, in effect, aggrieved by the action of the county tax board in revising each assessment downward to a valuation which, in the opinion of Jersey City, is less than the true value of each of such properties as of November 10th, 1942, the 1943 assessment date. Upon this state of facts, Jersey City concludes that it is "discriminated" against. Discrimination, by the very nature of the term, must relate to the conduct of the assessor, or of the county board, not with respect to the subject-matter of the appeal exclusively, but with respect to the assessment of other property in the taxing district or another taxing district in relation to the assessment of the appellant's property.

This finds support by the definition of "discrimination" in Webster's Universal Unabridged Dictionary:

"To divide, to distinguish, to observe the difference between, *to treat differently.*"

Mr. Potterton testified that all of the appeals by Jersey City were filed for the purpose of raising each separate realty assessment. This is further indicated by the following allegation in each petition:

"* * * the said assessment is below the true value of said property as of November 10th, 1942."

And the petitions conclude with this prayer:

"Your petitioner therefore prays that the said assessment for the year 1943 be increased to the true value of the said property as of November 10th, 1942. * * *"

Thus it is clear that the petitions do not allege any facts constituting discrimination.

On the other hand, our courts have frequently interpreted "discrimination" as used in the statutory sense. In *Royal Manufacturing Co.* v. *Board of Equalization of Taxes* (*Supreme Court*), 76 *N. J. L.* 402; 70 *Atl. Rep.* 978, Mr. Justice Parker is quoted:

"Any taxpayer who considers that other property in the same taxing district is undervalued, is entitled to go to the county board and apply to have the valuation of such other property raised.

\*     \*     \*     \*     \*     \*     \*

"\* \* \* By that act, the county boards are required to secure taxation of all property at its true value; so that the fact that the property of A is assessed at its true value and the property of other taxpayers within the same district is assessed below its true value, affords A no ground for demanding a reduction of his valuation, though it does entitle him to apply for an increase in the valuation of others \* \* \*."

In *Post* v. *Warren Point Volunteer Firemen's Association,* 19 *N. J. Mis. R.* 367; 19 *Atl. Rep.* (2d) 636, an appeal was taken to the Bergen County Board of Taxation under *R. S.* 54:3–21; *N. J. S. A.* 54:3–21, charging discrimination. There the State Board of Tax Appeals held that:

"Petitioner certainly has been discriminated against as a taxpayer if an improper exemption has been allowed by the assessor in favor of property owned by others."

By force of numerous other decisions in this state, an allegation of discrimination should always rest upon the validity of an assessment against property other than that owned by the appealing taxpayer. See *Kloz* v. *Armenian Center, N. J. Tax Reports* (1912-1934) 597; *Diorio* v. *Atlantic City,* 20 *N. J. Mis. R.* 105; 25 *Atl. Rep.* (2d) 26; *Wayne* v. *Laflin,* 76 *N. J. L.* 176; 68 *Atl. Rep.* 909; *Hakes* v. *Chatham, N. J. Tax Reports* (1912-1934) 115; *Hackensack Water Co.* v. *Woodcliffe Lake,* 104 *N. J. L.* 46; 139 *Atl. Rep.* 410.

A taxpayer has no control over the making of his or any other assessment. The authority to make assessments is limited to public officials, assessors in the first instance, and thereafter to county boards as a correctory authority. A taxpayer may complain of, but can never practice discrimina-

tion. That, by limitation of statute, is a vice peculiar to public officials. This the legislature seemingly knew and contemplated when it enacted *R. S.* 54:3–21; *N. J. S. A.* 54:3–21, for it therein limited the service of a copy of the petition of appeal to the "clerk or attorney of the taxing district." There is no provision in that section for the service of a petition upon a taxpayer for the reason that taxing districts, limited as they are to county board appeals only in cases of discrimination, seek redress for discrimination only against other taxing districts.

We have made exhaustive research of the authorities in this state and have been unable to locate any case wherein a charge of assessment discrimination has been sustained unless predicated upon the relative assessments of two or more properties.

For the reasons expressed herein, we are of the opinion that each and every one of the petitions of appeal filed herein by Jersey City seeking increases of 1943 assessments should be dismissed.