STATE OF NEBRASKA EX REL. PAUL L. DOUGLAS, ATTORNEY GENERAL OF THE STATE OF NEBRASKA, PLAINTIFF, v. DONNA KARNES, TAX COMMISSIONER OF THE STATE OF NEBRASKA, DEFENDANT.

346 N.W.2d 231

Filed March 9, 1984. No. 83-241.

Wright Rembolt Milligan & Berger, for defendant.

Paul L. Douglas, Attorney General, and Ralph H. Gillan, for plaintiff.

William B. Brandt of Brandt, Horan & Hallstrom, for amicus curiae Nebraska Bankers Association, Inc.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

SHANAHAN, J.

As authorized by Neb. Const. art. V, § 2, Neb. Rev. Stat. § 24-204 (Reissue 1979), and Neb. Ct. R. 15 (Rev. 1982), Paul L. Douglas, Attorney General of the State of Nebraska (Attorney General), filed an original action in this court against Donna Karnes, Tax Commissioner of the State of Nebraska (Commissioner), for a declaratory judgment that a part of the Nebraska corporate franchise tax, Neb. Rev. Stat. § 77-2734(2) (Cum. Supp. 1982), constitutes a discriminatory franchise tax prohibited by federal law [31 U.S.C. § 742 (1976); 31 U.S.C.A. § 3124(a) (1983)] and is, therefore, an invalid tax.

The Nebraska franchise tax is authorized by § 77-2734(2) (Reissue 1981), a part of the Nebraska Revenue Act of 1967: "[F]or the privilege of exercising its franchise or doing business in this state in a corporate capacity, there is hereby imposed a franchise tax on each corporation . . . measured by its entire net income derived from all sources within this state for the taxable year . . . . [T]he taxpayer's entire net income shall be its federal taxable income derived from sources within this state . . . *without regard to the modification referred to in section 77-2741* . . . ." (Emphasis supplied.)

Neb. Rev. Stat. § 77-2741 (Reissue 1981) provides: "Interest and dividends are allocable to this state if the taxpayer's commercial domicile is in this state, subject to the modifications provided by section 77-2716." Reductions regarding tax-exempt interest income are found in Neb. Rev. Stat. § 77-2716(1) (Reissue 1981): "There shall be subtracted from federal taxable income interest or dividends on obligations of the United States . . . to the extent includible in gross income for federal income tax purposes but exempt from state income taxes under the laws of the United States; *Provided*, that the amount sub-

tracted under the provisions of this subsection shall be reduced by any interest on indebtedness incurred to carry the obligations or securities described in this subsection, and by any expenses incurred in the production of interest or dividend income described in this subsection to the extent that such expenses . . . are deductible in determining federal taxable income."

By precluding availability of § 77-2741 to a corporation, § 77-2734(2) excluded federal interest from a corporation's net (taxable) income as a base for the Nebraska franchise tax only so long as interest on U.S. obligations was also excluded from income taxation under federal law.

From September 22, 1959, until September 13, 1982, 31 U.S.C. § 742 provided: "[A]ll stocks, bonds, Treasury notes, and other obligations of the United States, *shall be exempt from taxation by or under State or municipal or local authority.* This exemption extends to every form of taxation that would require that either the obligations or the interest thereon, or both, be considered, directly or indirectly, in the computation of the tax, *except nondiscriminatory franchise or other nonproperty taxes in lieu thereof imposed on corporations* and except estate taxes or inheritance taxes." (Emphasis supplied.) (31 U.S.C. § 742 was replaced on September 13, 1982, by 31 U.S.C.A. § 3124(a) without any material effect on the question in this case.)

After enactment of the Nebraska franchise tax in 1967, and until 1976, the Internal Revenue Code excluded from "gross" and "taxable" income any interest on obligations of the United States. See I.R.C. §§ 61(a)(4), 63(a), and 103(a)(2) (1970).

By the Tax Reform Act of 1976 (Pub. L. No. 94-455, § 1901, 90 Stat. 1764), Congress amended I.R.C. § 103(a), namely, interest on obligations of a state or its political subdivisions remained excluded from gross income, but, more importantly, interest on obligations of the United States became includable in

gross income and ultimately in taxable income. While Congress changed federal law regarding taxability of interest from federal obligations, Nebraska did not alter its franchise tax, which still retained "federal taxable income" as the base for franchise tax liability. Nebraska's failure to adapt the franchise tax in light of the change in federal income tax law resulted in a franchise tax with a base excluding interest from obligations of a state or its political subdivisions but including interest on federal obligations.

The U.S. Supreme Court, on January 24, 1983, decided *Memphis Bank & Trust Co. v. Garner*, ____ U.S. ____, 103 S. Ct. 692, 74 L. Ed. 2d 562 (1983), wherein the court reviewed a Tennessee 3-percent tax on a bank's net earnings which included interest received on U.S. obligations and obligations of states other than Tennessee. The Supreme Court of Tennessee had held that the questioned bank tax was a nondiscriminatory franchise tax excepted by 31 U.S.C. § 742. See *Memphis Bank & Trust Co. v. Garner*, 624 S.W.2d 551 (Tenn. 1981). However, the U.S. Supreme Court held that the Tennessee bank tax discriminated against U.S. obligations, contrary to 31 U.S.C. § 742, and that the Tennessee tax, therefore, deprived U.S. obligations of the immunity from state taxation afforded by federal law.

During an extensive hearing before the Nebraska Legislature's Committee on Revenue, serious question was raised about Nebraska's franchise tax in view of *Memphis*. Measures were suggested in committee to cure or eliminate the "discriminatory provision in the current corporate franchise tax." See Introducer's Statement of Intent, Committee on Revenue, L.B. 619, 88th Leg., 1st Sess., and committee hearing (Mar. 16, 1983). Floor debate in the Legislature included reference to *Memphis* (the "Tennessee case"), the effect of that decision on the Nebraska franchise tax, and the "discriminatory manner" in which the franchise tax was applied re-

garding federal obligations. See Remarks for Special Permission to Introduce Bill, 88th Leg., 1st Sess., 1075 (Feb. 28, 1983), and Floor Debate, L.B. 619, at 4103 (Apr. 27, 1983). By a vote of 45 to 1, the 1983 Legislature passed L.B. 619 on May 18, 1983, and deleted from § 77-2734(2) the phrase "without regard to the modification referred to in section 77-2741." See § 77-2734(2) (Supp. 1983). The Governor signed L.B. 619 on May 23, 1983. As a result of such amendment in 1983 and through the statutory conduit of § 77-2741, the Nebraska franchise tax incorporated the provisions of § 77-2716(1), which in substance authorizes subtraction of federal interest or dividends from federal taxable income, and, before such reduction of federal taxable income, the amount to be subtracted shall itself be reduced "by any interest on indebtedness incurred to carry the obligations or securities . . . and [for] any expense incurred in the production of interest or dividend income . . . to the extent that such expenses . . . are deductible in determining federal taxable income." *Id.*

Generally, if a tax requires that earning income and exercising the privilege of doing business in a corporate form coincide before imposing tax liability, such tax is properly characterized as a franchise tax. See, *Educational Films Corp. v. Ward,* 282 U.S. 379, 51 S. Ct. 170, 75 L. Ed. 400 (1931); *Flint v. Stone Tracy Co.,* 220 U.S. 107, 31 S. Ct. 342, 55 L. Ed. 389 (1911); *Reuben L. Anderson-Cherne, Inc. v. Commr. of Taxation,* 303 Minn. 124, 226 N.W.2d 611 (1975). A franchise tax may be described as a tax imposed for the privilege of doing business as a corporation within a state. There is no doubt, and the parties concede, the tax imposed by § 77-2734(2) is a franchise tax.

The Attorney General, relying on *Memphis,* requests this court to declare invalid that part of the pre-1983 Nebraska franchise tax which conflicts with federal law [31 U.S.C. § 742; 31 U.S.C.A. § 3124(a)].

The Commissioner contends that the Nebraska

franchise tax does not discriminate against federal obligations, because the franchise tax does not "single out such obligations for special, burdensome treatment." Brief for Defendant at 10.

There are two parts of the U.S. Constitution affecting our decision, namely, article I, § 8, clause 2: "[The Congress shall have Power] To borrow Money on the credit of the United States," and article VI, clause 2, often called the supremacy clause: "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

Chief Justice John Marshall captured the essence of the supremacy clause by his expressions in two noteworthy cases decided shortly after adoption of the U.S. Constitution. "[T]he States have no power . . . to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by congress to carry into execution the powers vested in the general government. This is, we think, the unavoidable consequence of that supremacy which the constitution has declared." *M'Culloch v. State of Maryland*, 17 U.S. 316 (4 Wheat. 316, 436) 4 L. Ed. 579 (1819). "But the framers of our constitution foresaw this state of things, and provided for it by declaring the supremacy not only of itself, but of the laws made in pursuance of it. The nullity of any act, inconsistent with the constitution, is produced by the declaration that the constitution is the supreme law. The appropriate application of that part of the clause which confers the same supremacy on laws and treaties, is to such acts of the state legislatures as do not transcend their powers, but, though enacted in the execution of acknowledged state powers, interefere with, or are con-

trary to the laws of congress, made in pursuance of the constitution, or some treaty made under the authority of the United States. In every such case, the act of congress, or the treaty, is supreme; and the law of the State, though enacted in the exercise of powers not controverted, must yield to it.'' *Gibbons v. Ogden*, 22 U.S. 1 (9 Wheat. 1, 210-11) 6 L. Ed. 23 (1824).

''The basic rule under the Constitution is that whatever the Central Government ordains—within the broad and ever-expanding area of its authority—is *supreme law*, enforceable as such and binding no less upon state executives, legislatures, and judiciaries than upon officers of the nation itself. If state action is seen to be incompatible with any legitimate exercise of power by the Federal Government, it loses all claim to validity. And this is true even though the state action in question is taken within a sphere in which the states might otherwise act. Because of the Supremacy Clause, we must, in Webster's phrase, conclude that federal and state powers do not stand upon equal elevation.'' 1 B. Schwartz, A Commentary on the Constitution of the United States, *The Powers of Government* 39 (1963).

The supremacy clause is the very foundation of our central government. Without the supremacy clause the parts—individual states—might govern the whole—the federal government.. Our government would be national in name only. In our form of national government the supremacy clause is a cost of constructing and maintaining constitutional federalism.

It is true that the Tax Reform Act of 1976 imposed a tax on previously excluded interest received from federal obligations. However, the fact remains that the questioned act of taxing, that is, the franchise tax, is an act of the State of Nebraska. Because Nebraska's system of taxation is so interrelated with federal income taxation, a change in federal tax law had a derivative but perhaps undetected conse-

quence in Nebraska's plan of taxation. Nevertheless, validity of a state law need not be determined by considering the motive behind the enactment of the law. Rather, the law " 'must be judged by its operation rather than by the motives which inspired it.' " *Tradesmens Bank v. Tax Comm'n*, 309 U.S. 560, 566, 60 S. Ct. 688, 84 L. Ed. 947 (1940). As Justice Holmes stated in *Chastleton Corp. v. Sinclair*, 264 U.S. 543, 547-48, 44 S. Ct. 405, 68 L. Ed. 841 (1924): "A law depending upon the existence of an emergency or other certain state of facts to uphold it may cease to operate if the emergency ceases or the facts change even though valid when passed." A change of circumstances may make a constitutional statute unconstitutional or a lawful act unlawful.

Congress enacted 31 U.S.C. § 742 to protect federal obligations against discriminatory state taxation when federal obligations are offered for sale in competition with state securities. In an effort to secure and protect credit, Congress provided federal obligations with immunity from discriminatory state taxes and sought to prevent the slightest diminution of market value or investment attractiveness of federal obligations. *Cf. N.J. Ins. Co. v. Div. of Tax Appeals,* 338 U.S. 665, 70 S. Ct. 413, 94 L. Ed. 439 (1950).

To *discriminate* means "to divide . . . to distinguish; to observe the difference between . . . to constitute a difference between." Webster's New Universal Unabridged Dictionary 522 (1983). See *Hudson County Board of Taxation—Jersey City v. Bettcher*, 22 N.J. Misc. 16, 34 A.2d 784 (1943).

The Commissioner contends that Nebraska's franchise tax does not "single out" federal obligations for special taxation. Although Nebraska's franchise tax does not point directly to federal obligations as objects of special taxation, the franchise tax does result in disparate taxation of governmental securities. *Memphis* condemned a discriminatory tax by Tennessee which extended preferential treatment only to the securities of Tennessee. In our case the

Nebraska franchise tax before 1983 imposed a tax on income from federal obligations and at the same time exempted interest income from securities of states, U.S. territories and possessions, the District of Columbia, and any political subdivisions of the foregoing. Such tax treatment cannot realistically be characterized as equal and uniform. This lack of equality and uniformity constitutes discrimination. Also, discrimination comes in forms other than preferential benefit conferred. Placing federal securities at a disadvantage in comparison with other governmental securities is just as discriminatory as preferentially favorable treatment of nonfederal securities. Nebraska's franchise tax afforded shelter to nonfederal securities but left federal securities out in the state tax-rain. That is discrimination under any meaning of the word. The disparity of state taxation under such circumstances is precisely the discrimination condemned by *Memphis*.

If the discrimination existing under the Nebraska franchise tax were permitted, a prospective corporate purchaser of government securities would be less inclined to purchase federal securities burdened with the extra onus of the Nebraska tax and would be more likely to purchase those governmental securities exempted from state tax liability. The Commissioner asserts that a prospective purchaser's preference is affected by existence of greater tax liability under federal income tax law and not by the smaller liability imposed by the Nebraska franchise tax. While that may be true in a commercial context, it is an irrelevant consideration under the Constitution. The degree of impaired marketability of federal obligations cannot be viewed as casual or incidental and, therefore, de minimis—a matter of triviality to the federal government. Buried in one of those fuzzy footnotes of *Memphis* is the U.S. Supreme Court's dismissal of de minimis in considering the impact on federal securities by a state's discriminatory tax condemned under 31 U.S.C. § 742.

See *Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 398 n.8, 103 S. Ct. 692, 697 n.8, 74 L. Ed. 2d 562 (1983). In order that a discriminatory state tax be intolerable under federal law, how much burden on federal obligations is permissible? Implicit in *Memphis* is the conclusion: Any burden is too much. In a more fundamental analysis a discriminatory state tax on federal securities is intolerable because the tax is impermissible.

Under *Memphis* there is no doubt that the Nebraska franchise tax, § 77-2734(2) (Cum. Supp. 1982), conflicted with 31 U.S.C. § 742 and 31 U.S.C.A. § 3124(a). Therefore, the Nebraska franchise tax imposed by § 77-2734(2), insofar as such tax is based on interest attributable to a federal obligation, is an invalid tax under federal law.

With elimination of the condemned phrase "without regard to the modification referred in section 77-2741," the Nebraska franchise tax is subject to reductions relative to federal taxable income as described in § 77-2716(1). That presents still another tax problem. Availability of a reduction of federal taxable income by subtracting "interest or dividends" from federal obligations and yet another deduction or reduction for debt interest in carrying the interest-producing obligations and expenses in the production of interest or dividend income would afford two reductions under § 77-2716(1) relative to federal taxable income. If interest on federal obligations cannot be included in a corporation's gross income, reductions cannot be allowed regarding debt interest and other expenses incurred in producing interest income as described in § 77-2716(1). To hold otherwise would result in a possible double reduction relative to taxable income in view of the formula found in § 77-2716(1). An analogous disallowance of interest and expenses relating to tax-exempt income can be found in I.R.C. § 265 (1982); cf. I.R.C. Regs. §§ 1.265-1 and 1.265-2 (1984).

The Attorney General and Commissioner agree

that, if that part of the Nebraska franchise tax in question is held to be invalid, such provision is severable from the remainder of the franchise tax law. In 1967 Neb. Laws, ch. 487, § 136, p. 1533 (Nebraska Revenue Act of 1967), there is: "If any section, subsection, sentence, clause, or phrase of this act is for any reason held to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this act." *Id.* at 1637. Upon reviewing the Nebraska franchise tax, § 77-2734(2), and in view of the criteria or tests for severability set forth in *State ex rel. Douglas v. Sporhase*, 213 Neb. 484, 329 N.W.2d 855 (1983), the federally offensive part of the Nebraska franchise tax, namely, "without regard to the modification referred to in section 77-2741," can be separated and excised from the Nebraska franchise tax so that the remainder of the franchise tax under § 77-2734(2) remains intact. See, also, *Anderson v. Tiemann*, 182 Neb. 393, 155 N.W.2d 322 (1967).

Therefore, we hold that the effect of the questioned part of the Nebraska franchise tax, "without regard to the modification referred to in section 77-2741" as found in § 77-2734(2), is a violation of 31 U.S.C. § 742 (31 U.S.C.A. § 3124(a)) and results in an invalid, discriminatory franchise tax proscribed by federal law. *Memphis Bank & Trust Co. v. Garner*, *supra*, was the death knell for state franchise taxes discriminating against federal obligations, which now tolls for the federally offensive part of the Nebraska franchise tax. After *Memphis* our holding can hardly be described as a decisional denouement, in view of the "Law of the Land."

JUDGMENT FOR PLAINTIFF.