809 F.2d 187
 59 A.F.T.R.2d 87-444, 87-1 USTC P 9128,
Unempl.Ins.Rep. CCH 17,151
 Harrison J. GOLDIN, Comptroller of the City of New York, and
The City of New York, Plaintiffs-Appellants,
v.
James BAKER, Secretary of the Treasury of the United States,
Defendant- Appellee.
 No. 391, Docket 86-6150.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 1, 1986.
Decided Jan. 12, 1987.
 
 Barry P. Schwartz, New York City, Asst. Corp. Counsel of the City of N.Y. (Frederick A.O. Schwarz, Jr., Corp. Counsel of the City of New York, Leonard Koerner, Fay Leoussis, Asst. Corp. Counsel, of counsel), for plaintiffs-appellants.
 Frederick M. Lawrence, New York City, Asst. U.S. Atty. for the S.D.N.Y. (Rudolph W. Giuliani, U.S. Atty. for the S.D. of N.Y., Nancy Kilson, Asst. U.S. Atty., of counsel), for defendant-appellee.
 Before FEINBERG, Chief Judge, NEWMAN and MINER, Circuit Judges.
 FEINBERG, Chief Judge:
 
 
 1
 This case requires us to examine the scope of the intergovernmental tax immunity doctrine. Plaintiffs Harrison J. Goldin, Comptroller of the City of New York, and the City (collectively referred to herein as the City) appeal from a judgment of the United States District Court for the Southern District of New York, Vincent L. Broderick, J., denying the City's motion for summary judgment and granting the motion of defendant Secretary of the Treasury to dismiss the City's complaint for failure to state a claim upon which relief can be granted. The City challenges the constitutionality of section 86 of the Internal Revenue Code of 1954 as amended, 26 U.S.C. Sec. 86, Pub.Law 98-21 Sec. 121, 97 Stat. 65 (1983).[1] The City contends that section 86 effectively places a tax on municipal bond interest and therefore violates the intergovernmental immunity doctrine and the Tenth Amendment of the United States Constitution. Because we think section 86 is constitutionally sound, we affirm.
 
 
 2
 In 1983, Congress enacted section 86 in order to tax a portion of the social security benefits received by persons who have substantial income from other sources, see House Conf.Rep. No. 47, 98th Cong., 1st Sess. 122-23, reprinted in 1983 U.S.Code Cong. & Ad.News 143, 404, 412-13. Section 86 requires that, if a taxpayer's "modified adjusted gross income" plus one-half of his social security benefits exceeds a certain "base amount," a portion of the taxpayer's social security benefits shall be included in his taxable income. The amount included in taxable income is either (i) one-half of the social security benefits received or (ii) one-half of the amount by which his modified adjusted gross income plus one-half of his social security benefits exceeds his base amount, whichever is less. The base amount is $32,000 for taxpayers filing joint returns and $25,000 for most other taxpayers. In determining a taxpayer's modified adjusted gross income, section 86 includes "interest received or accrued by the taxpayer during the taxable year which is exempt from tax." 26 U.S.C. Sec. 86(b)(2)(B). It is this last proviso that gives rise to the controversy before us.
 
 
 3
 The Secretary's excellent brief offers two examples to illustrate the operation of section 86.
 
 
 4
 Taxpayer A, who files a joint return, has an adjusted gross income ... of $29,000. He received $2,000 in tax-exempt interest income and $5,000 in Social Security benefits. To compute A's "modified adjusted gross income," add his tax-exempt interest income ($2,000) to his adjusted gross income ($29,000). Thus, his "modified adjusted gross income" is $31,000. Section 86 applies to A only if this sum plus one-half of his Social Security benefits exceeds the base amount of $32,000. In this example, A's "modified adjusted gross income" ($31,000) plus one-half of his Social Security benefits ($2,500) totals $33,500, and exceeds his base amount by $1,500. Some portion of his Social Security benefits is thus taxable. Because one-half of the excess ($750) is less than one-half of the total Social Security benefits received, the taxpayer would be required to include $750 from his Social Security benefits in his gross income for purposes of computing his taxable income.
 
 
 5
 Taxpayer B, who files a joint return, has an adjusted gross income of ... $35,000. He also received $2,000 in tax-exempt interest income and $5,000 in Social Security benefits. B's "modified adjusted gross income" is thus $37,000; when added to one-half of his Social Security benefits, the total is $39,500, which exceeds his base amount by $7,500. Some portion of his Social Security benefits is thus taxable. Because one-half of his Social Security benefits ($2,500) is less than one-half of the excess, only one-half of his Social Security benefits is included in gross income for purposes of computing taxable income.
 
 
 6
 Thus, for certain taxpayers (like taxpayer A), the effect of section 86 can be as follows: If they have interest income from tax-exempt municipal securities, a portion of their social security benefits will be taxed. On the other hand, if that tax-exempt income did not exist, their social security benefits would be taxed to a lesser degree or not at all. This effect of section 86 operates on a fairly narrow group of taxpayers. Nonetheless, it could make municipal securities marginally less attractive to investors and thereby increase the interest rate the City has to pay to attract lenders. The City contends that section 86 is a tax on interest income from municipal securities and that it threatens the City's ability to provide essential services by impairing the City's ability to borrow money.
 
 
 7
 In support of its claim that section 86 violates the intergovernmental immunity doctrine, the City relies on Pollock v. Farmers' Loan & Trust Co., 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759, modified on rehearing, 158 U.S. 601, 15 S.Ct. 912, 39 L.Ed. 1108 (1895). In Pollock, the Supreme Court held a federal statute imposing a tax on income from municipal bonds to be unconstitutional, see 157 U.S. at 583-86, 15 S.Ct. at 690-91. Whether the rule of Pollock has survived the ninety years since it was announced is questionable, see South Carolina v. Regan, 465 U.S. 367, 404-15, 104 S.Ct. 1107, 1127-34, 79 L.Ed.2d 372 (1984) (Stevens, J., dissenting). The passage of the Sixteenth Amendment to the Constitution in 1913 and numerous Supreme Court decisions since that time have cast doubt on the vitality of Pollock. We need not face this question, however, since we find that section 86 is not a tax on interest paid by the City.
 
 
 8
 By its terms, section 86 is part of a tax on social security income. Judge Broderick correctly pointed out that the tax is intended to strengthen the social security system by requiring "taxpayers who have a comfortable flow of income" to pay a tax on part of their social security benefits. See S.Rep. No. 23, 98th Cong., 1st Sess. 25-28, reprinted in 1983 U.S.Code Cong. & Ad.News 143, 166-69. Admittedly, tax-exempt municipal bond income will, in certain cases, affect this new tax on social security benefits. However, that by itself does not make section 86 a direct tax on municipal bond income.
 
 
 9
 Indeed, in United States v. Atlas Life Ins. Co., 381 U.S. 233, 85 S.Ct. 1379, 14 L.Ed.2d 358 (1965), the Supreme Court upheld a statute that, like section 86, required certain recipients of tax-exempt income to pay a larger tax than they would have paid had they not received the tax-exempt income. In Atlas, the Court was presented with a statute that required life insurance companies to allocate a pro rata share of all their income, tax-exempt or otherwise, to their reserves. The reserves were required in order to guarantee payment to policyholders. Income placed in the reserves was not taxed. Rather than include a pro rata share of its tax-exempt income in its reserves, the insurance company naturally preferred to attribute none of its tax-exempt income to the mandatory reserve deposits: using regular income for this purpose would reduce its tax bill by decreasing the amount of taxable income remaining after it took its reserve deduction. In an argument similar to that advanced by the City here, the company contended that the statute, as applied, was unconstitutional because an insurance company that received tax-exempt income from "investing its 'idle' assets in municipal bonds" would be subject to a greater tax than an insurance company that did not make "the additional investment at all." 381 U.S. at 250, 85 S.Ct. at 1389. The Supreme Court firmly rejected this view, adopting instead "the principle of charging exempt income with a fair share of the burdens properly allocable to it." 381 U.S. at 251, 85 S.Ct. at 1389. The Court concluded that an added burden on tax-exempt income did not constitute a tax on that income.
 
 
 10
 Furthermore, Pollock has not been a barrier to taxes on the profits from the sale of municipal bonds, Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125, 75 L.Ed. 304 (1931), or to estate taxes on their transfer at death, Greiner v. Lewellyn, 258 U.S. 384, 42 S.Ct. 324, 66 L.Ed. 676 (1922). Section 86 is merely another example of a federal tax that makes a municipal security marginally less attractive--here, to some persons who also receive social security benefits. A taxpayer who does not receive such benefits is affected only remotely, if at all, by section 86, even if the taxpayer owns municipal bonds. In short, section 86 is not a tax on income from that type of security.
 
 
 11
 The City argues that even if the narrow rule of Pollock does not cover this case, the broader principles of intergovernmental immunity underlying Pollock require us to invalidate the statute. We disagree. The origins of intergovernmental tax immunity lie as far back as McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819), and Collector v. Day, 11 Wall. 113, 20 L.Ed. 122 (1871). The policy behind the doctrine is restricted to insuring that a federal tax does not destroy the state's ability to function:
 
 
 12
 [T]he Court was concerned with the continued existence of the states as governmental entities, and their preservation from destruction by the national taxing power. The immunity which it implied was sustained only because it was one deemed necessary to protect the states from destruction by the federal taxation of those governmental functions which they were exercising when the Constitution was adopted and which were essential to their continued existence.
 
 
 13
 Helvering v. Gerhardt, 304 U.S. 405, 414, 58 S.Ct. 969, 972, 82 L.Ed. 1427 (1938).
 
 
 14
 Because federal taxes that place indirect burdens on states and municipalities have not generally implicated this policy, the intergovernmental immunity doctrine has not been a bar to a broad array of taxes at least as burdensome on states and municipalities as section 86, e.g., Willcuts v. Bunn, 282 U.S. 216, 51 S.Ct. 125 (tax on profits from sale of municipal bonds); Greiner v. Lewellyn, 258 U.S. 384, 42 S.Ct. 324 (tax on transfer of municipal securities after death); Metcalf & Eddy v. Mitchell, 269 U.S. 514, 46 S.Ct. 172, 70 L.Ed. 384 (1926) (tax on income of independent contractor earned from contracts with a state); Helvering v. Gerhardt, 304 U.S. 405, 58 S.Ct. 969 (tax on salaries of employees of state-controlled corporations). Simply put, "an economic burden on traditional state functions without more is not a sufficient basis for sustaining a claim of immunity." Massachusetts v. United States, 435 U.S. 444, 461, 98 S.Ct. 1153, 1164, 55 L.Ed.2d 403 (1978).
 
 
 15
 The Court stated as long ago as Willcuts v. Bunn, 282 U.S. at 225, 51 S.Ct. at 127:
 
 
 16
 The power to tax is no less essential than the power to borrow money, and, in preserving the latter, it is not necessary to cripple the former by extending the constitutional exemption from taxation to those subjects which fall within the general application of non-discriminatory laws, and where no direct burden is laid upon the governmental instrumentality, and there is only a remote, if any, influence upon the exercise of the functions of government.
 
 
 17
 Section 86, which is a tax on social security benefits, imposes just this kind of indirect burden. See Shapiro v. Baker, 646 F.Supp. 1127 (D.N.J.1986). The intergovernmental immunity doctrine does not apply.
 
 
 18
 The City's argument that section 86 violates the Tenth Amendment of the United States Constitution merits little discussion. The Tenth Amendment provides:
 
 
 19
 The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.
 
 
 20
 The City claims that section 86 impairs its "ability to function effectively in a federal system," citing Fry v. United States, 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 1795 n. 7, 44 L.Ed.2d 363 (1975). Such a drastic view of section 86 is totally unsupportable. Moreover, "[b]ecause the power to tax private income has been expressly delegated to Congress, the Tenth Amendment has no application to this case." South Carolina v. Regan, 465 U.S. at 418, 104 S.Ct. at 1135 (Stevens, J., dissenting).
 
 
 21
 Accordingly, the judgment of the district court is affirmed.
 
 
 
 [1]
 Section 86 provides, in relevant part, as follows:
 Sec. 86. Social security and tier 1 railroad retirement benefits
 (a) In general.--Gross income for the taxable year of any taxpayer described in subsection (b) (notwithstanding section 207 of the Social Security Act) includes social security benefits in an amount equal to the lesser of--
 (1) one-half of the social security benefits received during the taxable year, or
 (2) one-half of the excess described in subsection (b)(1).
 (b) Taxpayers to whom subsection (a) applies.--
 (1) In general.--A taxpayer is described in this subsection if
 (A) the sum of
 (i) the modified adjusted gross income of the taxpayer for the taxable year, plus
 (ii) one-half of the social security benefits received during the taxable year, exceeds
 (B) the base amount.
 (2) Modified adjusted gross income.--For purposes of this subsection, the term "modified adjusted gross income" means adjusted gross income--
 (A) determined without regard to this section and sections 221, 911, 931, and 933, and
 (B) increased by the amount of interest received or accrued by the taxpayer during the taxable year which is exempt from tax.
 (c) Base amount.--For purposes of this section, the term "base amount" means--
 (1) except as otherwise provided in this subsection, $25,000,
 (2) $32,000, in the case of a joint return, and
 (3) zero, in the case of a taxpayer who--
 (A) is married at the close of the taxable year (within the meaning of section 143) but does not file a joint return for such year, and
 (B) does not live apart from his spouse at all times during the taxable year.