LLOYD BOERSMA AND PHYLLIS BOERSMA, APPELLANTS, V. DONNA KARNES, NEBRASKA TAX COMMISSIONER, AND NEBRASKA DEPARTMENT OF REVENUE, APPELLEES.

417 N.W.2d 341

Filed January 8, 1988.   No. 86-196.

Michael L. Johnson of Luebs, Dowding, Beltzer, Leininger, Smith & Busick, for appellants.

Robert M. Spire, Attorney General, and L. Jay Bartel, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

GRANT, J.

Plaintiffs-appellants, Lloyd and Phyllis Boersma, filed a U.S. income tax return for 1984 on form 1040 and included one-half of their total Social Security benefits as income for federal tax purposes. Plaintiffs also filed a Nebraska individual income tax return for 1984 on form 1040N. Pursuant to Neb. Rev. Stat. § 77-2795 (Reissue 1986), plaintiffs filed a claim for refund with defendant-appellee Donna Karnes, Nebraska Tax Commissioner. Plaintiffs contended that since one-half of their Social Security benefits had been indirectly taxed by the State of

Nebraska, they were entitled to a refund in the amount of $766. In addition, plaintiffs claimed a refund on behalf of all other taxpayers similarly situated.

The claim was denied by the Tax Commissioner on August 13, 1985. Pursuant to Neb. Rev. Stat. § 77-2798 (Reissue 1986), plaintiffs then filed a petition in district court, for themselves and all taxpayers similarly situated, seeking review of defendant Tax Commissioner's denial of the refund claim. Defendants answered and then moved for summary judgment. The district court granted defendants' motion, holding that there were no issues of material fact and that, as a matter of law, the State of Nebraska was allowed to base the income tax due Nebraska on a portion of Social Security benefits reported on plaintiffs' federal income tax return and that defendant Tax Commissioner was correct in denying plaintiffs' refund claim. The district court did not decide the question of whether a class action was allowable in this type of action. Plaintiffs timely appealed.

The issue in this case arises as a result of certain changes made by Congress in the federal Internal Revenue Code. Until January 1, 1984, Social Security benefits and tier 1 railroad retirement benefits were not included in gross income and therefore were not subject to federal income tax. Before that time, the Internal Revenue Service held that insurance benefit payments to individuals under the provisions of the Social Security Act were not includable in the gross income of the recipients.

Congress modified this general exclusion effective on January 1, 1984, by a change in the law, which is codified at I.R.C. § 86 (Supp. III 1985). This change results in a portion of Social Security benefits being includable in gross income. Generally, the new law results in including one-half of Social Security benefits in gross income if the taxpayer's gross income plus Social Security benefits is over $25,000 ($32,000 for married, jointly filing taxpayers). For example, in the instant case, plaintiffs' gross income (including Social Security benefits) was over $88,000. As a result, one-half of their total Social Security benefits of $20,798 was includable in their gross income. The applicable federal tax rate was applied to this gross

income figure, which generated plaintiffs' federal tax liability.

When this return was filed in 1985 for the 1984 tax year, the Nebraska income tax liability was computed by applying the appropriate state income tax rate to the federal tax liability. See Neb. Rev. Stat. § 77-2715(1) (Supp. 1983). This computation resulted in a state tax liability for plaintiffs of $3,114. This figure included $766 which was attributable to state taxation of Social Security benefits.

In their appeal plaintiffs set out two assignments of error: (1) that the district court erred when it refused to allow plaintiffs to maintain a class action under Neb. Rev. Stat. § 25-319 (Reissue 1985) for a refund of state income taxes on behalf of all persons similarly situated, and (2) that the district court erred when it granted defendants' motion for summary judgment, holding, in effect, that as a matter of law a portion of plaintiffs' Social Security benefits is subject to state income tax. We affirm.

Plaintiffs allege that the seeking of refunds of state income taxes is a proper matter for a class action pursuant to § 25-319. Such an assertion is contrary to the established rule in this state that an action "cannot be maintained by one taxpayer on behalf of himself and others similarly situated to recover back taxes alleged to have been illegally assessed. In such case each must bring an action on his own behalf." *Hansen v. County of Lincoln*, 188 Neb. 461, 465, 197 N.W.2d 651, 655 (1972), *supp. op.* 188 Neb. 798, 197 N.W.2d 655; *State ex rel. Sampson v. Kenny*, 185 Neb. 230, 175 N.W.2d 5 (1970); *Willms v. Nebraska City Airport Authority*, 193 Neb. 567, 228 N.W.2d 276 (1975).

In *State ex rel. Sampson v. Kenny, supra* at 232-33, 175 N.W.2d at 7, we stated:

> It is clearly the policy of the Legislature in setting up a refund statute to require individual action. Taxes ordinarily paid under a mistake of law are not recoverable, and the refund statute gives special relief in this situation. The county treasurer's duty arises only on a taxpayer's individual application. The Legislature is authorized and may properly, on considerations of public policy, require individual applications and it is not mere speculation to suggest that this requirement is related to the security of the public treasury.

Neb. Rev. Stat. § 77-2793 (Reissue 1986) provides a procedure by which a taxpayer may obtain a refund of an overpayment of income taxes. This statutory procedure is exclusive and does not provide for class actions. In the absence of specific statutory authority waiving governmental immunity to permit representative suits, class actions cannot be maintained to recover taxes paid. Neb. Rev. Stat. §§ 77-2793 through 77-27,101 (Reissue 1986), the sections which pertain to income tax refunds, refer to actions brought by the taxpayer, with no mention of class actions.

Although *Sampson, supra,* and *Hansen, supra,* both involved property tax assessments rather than income tax, this court finds these cases controlling. We are not persuaded by plaintiffs' attempt to distinguish class actions in property tax cases from those involving, as in the instant case, income taxes. This court has repeatedly recognized the rule requiring individual actions in obtaining tax refunds. Plaintiffs' action in this case should not be treated as a class action.

With regard to plaintiffs' other assignment of error, plaintiffs do not contend that there is any fact question presented, but that the court erred as a matter of law. Plaintiffs first contend that the Nebraska tax on plaintiffs' Social Security benefits results in an unconstitutional burden on the power of Congress to provide for the general welfare, in violation of U.S. Const. art. VI, cl. 2, the "supremacy clause." Plaintiffs state that "[t]he determining question is whether the income tax imposed by the State of Nebraska on Social Security benefits operates to 'retard, impede, burden, or in any manner control' the constitutional power of Congress to provide for the general welfare under the Social Security Act." Brief for Appellants at 6. Plaintiffs then assert that "[i]f the State of Nebraska has the power to tax Social Security benefits, it has the power to destroy the purposes of the Social Security Act." *Id.* That assertion is not correct.

We recognize that should Congress forbid the various states to tax federal Social Security benefits, in whole or in part, even though the federal government itself chose to tax such benefits, the federal law would control. Indeed, that is what has happened in this case, and the State of Nebraska has recognized

the supremacy of federal law. See the later discussion herein comparing the effect of 45 U.S.C. § 231m (Supp. III 1985) (concerning the nontaxability of tier 1 railroad retirement benefits) and 42 U.S.C. § 407 (Supp. III 1985) (concerning the taxability of Social Security benefits). Until 1984, the Congress did not permit any taxation of Social Security benefits, and no taxing authority, federal or state, taxed such benefits.

Congress, with the passage in 1983 of the law codified at I.R.C. § 86, granted the federal government the power to tax Social Security benefits to a defined, limited extent by, in effect, dividing Social Security benefits into two categories—benefits going to persons with a gross income greater than $25,000 for single taxpayers (or $32,000 for married, jointly filing taxpayers) and benefits going to those receiving less than those amounts. Section 86 requires only those individuals who are higher income taxpayers (as distinguished from "lower-income individuals" mentioned in the legislative history below) to include a portion of their Social Security benefits in gross income. Other taxpayers do not include any portion of their Social Security benefits in gross income.

We agree with plaintiffs' depiction of Congress' rationale for passing the Social Security Act. Plaintiffs cite *Helvering v. Davis*, 301 U.S. 619, 57 S. Ct. 904, 81 L. Ed. 1307 (1937), where the U.S. Supreme Court discussed the authority of Congress to enact the Social Security Act and the purpose of the act:

> Congress may spend money in aid of the "general welfare." Constitution, Art. I, section 8 . . . .
>
> . . . .
>
> . . . The hope behind this statute is to save men and women from the rigors of the poor house as well as from the haunting fear that such a lot awaits them when journey's end is near.

301 U.S. at 640-41.

Plaintiffs assert that *any* state taxation of these benefits burdens the act's operation. We disagree. When Congress modified the act in 1983, it in no way departed from the above-stated purpose. The legislative history of this modification explains the congressional policies and purposes behind the extension of federal taxation to a portion of these

benefits.

> Your Committee believes that the present policy of excluding all social security benefits from a recipient's gross income is inappropriate. Your Committee believes that social security benefits are in the nature of benefits received under other retirement systems, which are subject to taxation to the extent they exceed a worker's after-tax contributions and that taxing a portion of social sercurity [sic] benefits will improve tax equity by treating more nearly equally all forms of retirement and other income that are designed to replace lost wages (for example, unemployment compensation and sick pay). . . .
>
> . . . .
>
> By taxing only a portion of social security and railroad retirement benefits (that is, up to one-half of benefits in excess of a certain base amount). Your Committee's bill assures that lower-income individuals, many of whom rely upon their benefits to afford basic necessities, will not be taxed on their benefits. The maximum proportion of benefits taxed is one-half in recognition of the fact that social security benefits are partially financed by after-tax employee contributions. The bill's method for taxing benefits assures that only those taxpayers who have substantial taxable income from other sources will be taxed on a portion of the benefits they receive.

H.R. Rep. No. 25, 98th Cong., 1st Sess. 24, *reprinted in* 1983 U.S. Code Cong. & Admin. News 219, 242.

It is clear, in light of the above-enunciated rationale, that Congress determined that federal taxation of higher income taxpayer's benefits did not adversely affect the purposes of the Social Security Act. The Congress deliberately lifted a defined portion of Social Security benefits into a category subject to federal tax. A state's indirect recognition of this taxable category does not, in any degree, give the state "the power to destroy the purposes of the Social Security Act," as alleged by plaintiffs. Taxation of these Social Security benefits by states is always subject to disallowance by federal act, but that disallowance has not yet been enacted.

That the power of taxation is one of vital importance;

that it is retained by the States; that it is not abridged by the grant of a similar power to the government of the Union; that it is to be concurrently exercised by the two governments; are truths which have never been denied. *M'Culloch v. State of Maryland*, 17 U.S. 415, 432, 4 Wheat. 316, 4 L. Ed. 579 (1819). Plaintiffs seem to imply that only the federal government is concerned about the care of people in financial difficulty because of age or other reasons and that only the federal government is concerned about retirement benefits in general. The State of Nebraska is vitally, and more immediately, concerned in those same areas. See, e.g., Neb. Rev. Stat. §§ 43-501 to 43-515 (Reissue 1984), 43-601 to 43-680 (Reissue 1984), 68-104 to 68-1521 (Reissue 1986), 71-516 to 71-518 (Reissue 1986), and 71-1401 to 71-1554 (Reissue 1986).

Plaintiffs then contend that 42 U.S.C. § 407 precludes Nebraska from taxing these benefits. Section 407 states, in pertinent part:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Plaintiffs contend that the word "levy" as used in § 407 refers to a tax levy and, therefore, that § 407 prohibits Nebraska from taxing Social Security benefits. If the word "levy," as used within the context of § 407, does mean "tax," the statute would act to preclude state taxation of these benefits. The thrust of plaintiffs' argument on this point rests on plaintiffs' contention as to the meaning of "levy" in § 407.

"Levy" is a term which is susceptible to divergent meanings, depending on how the word is used. When "levy" is used as a noun, Black's Law Dictionary provides two conceptually different definitions. "Levy" is initially defined in Black's as follows: "A seizure. The obtaining of money by legal process through seizure and sale of property; the raising of money for which an execution has been issued." Black's Law Dictionary 816 (5th ed. 1979). Black's further defines "levy" as:

> In reference to taxation, the word may mean the legislative function and declaration of the subject and rate or amount of taxation . . . . "Levy," when used in connection with authority to tax, denotes exercise of legislative function, whether state or local, determining that a tax shall be imposed and fixing amount, purpose and subject of the exaction.

*Id.*

In order to ascertain which of these two definitions should be adopted for purposes of construing § 407, it is appropriate to examine the word "levy" within the context of the statutory language which surrounds it.

The word must be read in context with the remainder of the statute. Section 407 states that Social Security benefits shall not be "subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law." The words surrounding "levy" in this statute operate to protect the Social Security benefits, which may be paid to persons such as plaintiffs, from judicial proceedings against persons such as plaintiffs. Judgment creditors in legal proceedings may not use the proceeds of the Social Security system to satisfy private obligations. Viewing the provision of § 407 in its entirety, we hold that plaintiffs' argument that the word "levy" is the equivalent of "tax" is without merit. In context with the remainder of the statute, the word "levy" refers to the enforcement of a judgment or other legal process involving the collection of debts through execution, attachment, garnishment, or levy.

Other courts have reached the same general conclusion. See *Matter of Neavear*, 674 F.2d 1201, 1205 (7th Cir. 1982), where the court stated:

> By its terms section 207 [42 U.S.C. § 407] is concerned with the protection of social security benefits from the reach of creditors. . . .
>
> . . . Section 207 speaks throughout in terms of the rights of social security *recipients* . . . and the protection of their *benefits* from the reach of creditors (through "execution, levy, attachment, garnishment, or other legal process").

(Emphasis in original.) Without more, § 407 clearly does not

exclude state taxation of Social Security benefits.

Plaintiffs then argue that I.R.C. § 86 provides an additional indication of congressional intent with regard to the taxation of these benefits. This statute, which results in a portion of Social Security benefits becoming subject to federal taxation, states in relevant part: "(a) In general. Gross income for the taxable year of any taxpayer described in subsection (b) (notwithstanding section 207 of the Social Security Act [42 U.S.C. § 407]) includes social security benefits in an amount equal to the lesser of . . . ."

Plaintiffs point to the parenthetical clause in subsection (a) "(notwithstanding section 207 of the Social Security Act [42 U.S.C. § 407])," and argue that if § 407 is not interpreted as prohibiting a tax on Social Security benefits, Congress would not have bothered to modify § 407 in I.R.C. § 86. The relevant portion of § 407 is set out above. Plaintiffs contend that the inclusion of this parenthetical statement is a clear indication that Congress interprets § 407 as a prohibition against a tax on these benefits. We do not agree, and hold that § 407 is not a specific indication of congressional intent to prohibit state taxation of Social Security benefits. As stated above, § 407 is concerned only with the protection of Social Security benefits from legal proceedings by creditors.

As a general rule of statutory construction, exemptions from taxation are to be narrowly construed. *Bingler v. Johnson*, 394 U.S. 741, 89 S. Ct. 1439, 22 L. Ed. 2d 695 (1969). A section from the Railroad Retirement Act, 45 U.S.C. § 231m, provides us with an example of expressed congressional intent to exclude benefits from state taxation. Tier 1 benefits are those portions of railroad retirement benefits which are analogous to the Social Security benefits in this case. Tier 1 benefits were specifically excluded from state taxation in § 231m, which states in part:

(a) Except as provided in . . . the Internal Revenue Code of 1954 [26 U.S.C. § 1 et seq.], notwithstanding any other law of the United States, *or of any State*, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process . . . .

(Emphasis supplied.)

Use of the word "tax" in § 231m indicates that Congress clearly recognizes the distinction between the words "tax" and "levy" in the context of exclusionary statutes, and clearly sets out how to exclude federal benefits from state taxation. We hold that neither the provisions of 42 U.S.C. § 407 nor those of I.R.C. § 86 preclude the State of Nebraska from taxing the portion of plaintiffs' Social Security benefits reported as federal taxable income.

Nebraska's recognition of the federal supremacy rights is further shown in the terms of Nebraska income tax form 1040N. That form, on line 25 of schedule II, specifically authorizes "adjustments decreasing federal taxable income, such as interest or dividend income from U.S. government bonds, other U.S. obligations, or Tier I or II benefits paid by Railroad Retirement Board." As set out above, § 231m expressly forbids state taxation of railroad retirement benefits. Nebraska does not tax those benefits. Also, as set out above, there is no such comparable federal statute prohibiting a state tax on Social Security benefits. Nebraska, therefore, taxes such benefits. The actions of the state have recognized the "supremacy clause."

We note that plaintiffs pled in paragraph 18 of their petition in the district court that the

> reduction for Tier I or II benefits paid by the Railroad Retirement Board with no reduction for Social Security benefits is discriminatory and constitutes unequal treatment of persons similarly situated, without a rational basis for distinction, thereby violating the equal protection clause of the Fourteenth Amendment to the United States Constitution, and Article I, Section 25 of the Nebraska Constitution.

Plaintiffs have not mentioned or discussed this issue in their brief. It is not properly before this court. We do not, therefore, discuss this issue.

Plaintiffs then contend that 31 U.S.C. § 3124 (1982) results in Social Security benefits being exempt from state taxation. Section 3124 states in relevant part: "(a) Stocks and obligations of the United States Government are exempt from taxation by a

State or political subdivision of a State."

Plaintiffs make two arguments in support of their position. They first contend that payment of Social Security benefits is an obligation of the U.S. government and is thus exempt from state taxation by the terms of § 3124. In the same manner they choose to construe the word "levy" as set out above, plaintiffs attribute a different meaning to the word "obligation" than is warranted by the statute.

"Obligation" may be a "duty" or "the act of obligating oneself to a course of action"; that is, in this case, the United States has recognized its duty to support its citizens in their later years or in emergencies. "Obligation" may also be "an investment security (corporate bonds and other obligations)." Webster's Third New International Dictionary, Unabridged 1556 (1981).

In § 3124, the meaning of "obligation" is that of an investment security, a financial instrument. A state may not tax the interest on such an obligation. In *State ex rel. Douglas v. Karnes*, 216 Neb. 750, 760, 346 N.W.2d 231, 236 (1984), this court held that *Memphis Bank & Trust Co. v. Garner*, 459 U.S. 392, 103 S. Ct. 692, 74 L. Ed. 2d 562 (1983), "was the death knell for state franchise taxes discriminating against federal obligations . . . ." The Nebraska opinion discussed the adverse effects of Nebraska's attempting to levy a tax on income from federal obligations while at the same time exempting interest income from state securities. It is clear the *Karnes* case was concerned with state taxation of interest being earned on federal "obligations" in the sense obligations are investment securities. We are not concerned with such "obligations" in this case.

This conclusion is buttressed when the source of § 3124 is examined. That source was 31 U.S.C. § 742 (1976), effective in 1959, which provided, in pertinent part: "Except as otherwise provided by law, all stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." The explanatory note following § 3124 states that the words: "Except as otherwise provided by law, all . . . bonds, Treasury notes, and other" contained in former § 742 were "omitted as

surplus." The Congress recognized that "stocks and obligations" as expressed in § 3124 means "stocks, bonds, Treasury notes, and other obligations of the United States," as stated in former § 742.

Regarding the statutory exemption provided under § 742, the U.S. Supreme Court, in *Smith v. Davis*, 323 U.S. 111, 116-17, 65 S. Ct. 157, 89 L. Ed. 107 (1944), stated:

> [Section 742] on its face applies only to written interest-bearing obligations issued pursuant to Congressional authorization. Stocks, bonds and Treasury notes are obviously of that nature. And, under the rule of *ejusdem generis*, it is reasonable to construe the general words "other obligations," which allegedly cover open accounts, as referring only to obligations or securities of the same type as those specifically enumerated. . . . This interpretation is in accord with the long established Congressional intent to prevent taxes which diminish in the slightest degree the market value or the investment attractiveness of obligations issued by the United States in an effort to secure necessary credit. It is unnecessary to extend such tax exemption, at least through statutory interpretation, to non-interest-bearing claims or obligations which the United States does not use or need for credit purposes.

Plaintiffs then argue that Social Security benefits are obligations of the U.S. government by virtue of the fact that the Federal Old-Age and Survivors Insurance Trust Fund invests in securities held by the Secretary of the Treasury. Plaintiffs state in their brief that the Social Security tax revenues which will ultimately be paid out to recipients are placed in this trust fund and that the portion of the trust fund not required to meet current benefit payments is invested in interest-bearing obligations of the United States under 42 U.S.C. § 401(d) (Supp. III 1985). Plaintiffs then contend that "[t]he Social Security benefits paid by the federal government represent the proceeds of United States obligations . . . ." Brief for Appellants at 10. It is not possible for this court to know if plaintiffs' statement is an accurate reflection of how the laws of the United States operate, but we do determine that the

Nebraska income tax in this case does not operate as a tax on the interest generated by any U.S. financial security or obligation, but operates on moneys received, in the nature of retirement annuities, by a Nebraska resident. Section 3124 does not prohibit the tax in question.

The arguments of plaintiffs are not persuasive. The order of the district court granting defendants' motion for summary judgment was correct and is affirmed.

AFFIRMED.