Gilbert and Virginia
CARTER, Appellants,

v.

DIRECTOR OF REVENUE, STATE OF
MISSOURI, Respondent.

No. 73049.

Supreme Court of Missouri,
En Banc.

March 5, 1991.
Rehearing Denied April 9, 1991.

struction of the revenue laws of this state, this Court has exclusive appellate jurisdiction. Mo. Const. art. V, sec. 3 and 18; Section 621.189, RSMo 1986. Affirmed.

## I.

The parties agree on the facts. The Carters filed a combined Missouri form 40 tax return for 1987. Appellants sought to exclude from their Missouri taxable income $8,748 received in federal Social Security benefits. The Carters included these benefits in their adjusted gross income for federal income tax purposes. The Department of Revenue denied the exclusion. The Carters sought review in the Commission. The Commission sustained the Director's denial of the Carters' claim for refund. This petition for review followed.

Gilbert Carter, Nevada, for appellants.

George Cox, Dept. of Revenue, Jefferson City, for respondent.

ROBERTSON, Judge.

Appellants Gilbert and Virginia Carter challenge Missouri's authority to tax portions of their Social Security retirement benefits, claiming that such income taxation violates: (1) equal protection, U.S. Const. amend XIV and Mo. Const. art. I, sec. 2; (2) the Social Security Act, 42 U.S.C. sec. 407; (3) intergovernmental tax immunity, U.S. Const. amend X; (4) Mo. Const. art. X, sec. 18(a) (establishing a revenue ceiling for state revenues); and (5) Mo. Const. art. III, sec. 1 (vesting legislative power in the Missouri General Assembly). The Administrative Hearing Commission (the Commission) denied the Carters' claims; they appealed. Because this case involves the con-

## II.

### A.

■ For their first point, the Carters argue that Missouri's taxation of Social Security benefits together with this State's exemption of certain Missouri retirement benefits[1] from state taxation violates the equal protection guarantees of U.S. Const. Amend XIV and Mo. Const. art. I, sec. 2. In support of this point, the Carters contend that *Davis v. Michigan Department of Treasury*, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989), and *Hackman v. Director of Revenue*, 771 S.W.2d 77 (Mo. banc 1989), control the result in this case. Read together, *Davis* and *Hackman* hold that a state law permitting taxation of federal retirement benefits while exempting state retirement benefits violates the intergovernmental tax immunity commanded in 4 U.S.C. sec. 111.[2]

---

1. *See, e.g.,* Section 70.755, RSMo 1986 (officers and employees of political subdivisions); Sections 86.190, 86.353, 86.493, and 87.365, RSMo 1986 (police and fire pensions); Section 104.250, RSMo 1986 (employees of the State Highway Patrol and Department of Highways and Transportation); Section 104.540, RSMo 1986 (elected state officials and state merit system employees); Section 169.587, RSMo 1986 (teachers and school employees).

2. 4 U.S.C. sec. 111 provides:

   The United States consents to the taxation of pay or compensation for personal service as an officer or employee of the United States ... by a constituted taxing authority having jurisdiction, if the taxation does not discriminate against the officer or employee because of the source of the pay or compensation.

Neither *Davis* nor *Hackman* assist the Carters. Those cases rest on principles of intergovernmental tax immunity mandated by federal statute. Since neither *Davis* nor *Hackman* rests on equal protection grounds, those cases are of no assistance to the Carters' equal protection claim.

■ Where neither a suspect classification nor a fundamental right is involved, a classification is measured against "the lenient standard of rationality" applied to economic and commercial regulation for purposes of equal protection analysis. *Exxon Corp. v. Eagerton,* 462 U.S. 176, 195, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983). If any state of facts can be conceived to justify a classification, it will be sustained. *City of St. Louis v. Liberman,* 547 S.W.2d 452, 458 (Mo. banc 1977).

In *Schnorbus v. Director of Revenue,* 790 S.W.2d 241, 243 (Mo. banc), *cert. denied,* —— U.S. ——, 111 S.Ct. 679, 112 L.Ed.2d 671 (1990), this Court found it rational for the General Assembly to exempt public employee retirement benefits as a means of creating "an additional benefit for potential employees to be attracted to government service in Missouri." This rationale, applicable to the public retirement benefits in this case, is sufficient to repel the Carters' equal protection attack. The point is denied.

### B.

■ The Carters' next point arises from differing treatment by the United States Congress of Social Security benefits and "Tier I" railroad retirement benefits. While federal law does not prohibit state taxation of Social Security benefits, 45 U.S.C. sec. 231m does exclude certain "Tier I" railroad retirement benefits from state taxation. The Carters contend that any attempt by Missouri to tax Social Security benefits while exempting from taxation "Tier I" railroad retirement benefits violates the equal protection guarantees of the federal and state constitutions by treating two classes of pensions differently for state income tax purposes.

The authority of the federal Congress to prohibit state taxation of categories of income is clear. U.S. Const. art. VI, sec. 2. The Carters do not contend otherwise. Instead, their argument goes to the power of Missouri to tax Social Security benefits in the absence of express authority to do so, and in the face of the mandate of Congress that similar pension benefits—the "Tier I" benefits—are exempt from state tax. Appellants expressly eschew a challenge to 45 U.S.C. sec. 231m; instead, they attack Missouri's differing treatment of the two categories of income.

We retreat to *McCullough v. Maryland,* 17 U.S. (4 Wheat.) 316, 425, 4 L.Ed. 579 (1819), for guidance here. There, the United States Supreme Court noted that the power of taxation "is retained by the States; that it is not abridged by the grant of a similar power to the government of the Union; that it is to be concurrently exercised by the two governments." Thus, the federal Constitution permits the states to maximize income tax revenues so long as its tax levies do not run afoul of federal prohibitions. Thus, taxation of Social Security benefits by Missouri is permissible because it is not prohibited by federal law.

The Carters' equal protection argument on this point must also fail. It is not the state law that establishes the classifications challenged; it is federal law. The Carters' argument bypasses the constitutionality of 45 U.S.C. 231m, instead challenging the state's discrimination on the basis of that law. They charge that Missouri can have no rational basis for taxing Social Security benefits while exempting "Tier I" benefits. The state, however, needs no rational basis to tax; only to discriminate. The federal prohibition against taxing "Tier I" benefits provides all the rational basis necessary to support the state's exemption of "Tier I" benefits while taxing Social Security benefits.

### C.

■ For their third point, the Carters argue that taxing Social Security benefits violates Section 207 of the Social Security Act (42 U.S.C. sec. 407). Section 207 reads:

(a) The right of any person to any future payment under this title shall not be transferable or assignable at law or in equity, and none of the moneys paid or payable or rights existing under this title shall be *subject to execution, levy, attachment, garnishment or other legal process,* or to the operation of any bankruptcy or insolvency law.

(b) No other provision of law, enacted before, on, or after the date of the enactment of this section, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

[Emphasis added.]

The Carters contend that the word "levy" means the "imposition of a tax." Thus, they posit, the phrase *"subject to execution, levy, attachment, garnishment or other legal process"* prohibits Missouri from taxing Social Security benefits.

We disagree. The word "levy" should be read within the context of the statute in which it is found to determine its meaning. "The words surrounding 'levy' in [sec. 207] operate to protect the Social Security benefits.... Judgment creditors ... may not use the proceeds of the Social Security system to satisfy private obligations." *Boersma v. Karnes,* 227 Neb. 329, 417 N.W.2d 341, 347, *appeal dismissed by,* 488 U.S. 801, 109 S.Ct. 29, 102 L.Ed.2d 9 (1988); *accord Matter of Neavear,* 674 F.2d 1201, 1206 (7th Cir.1982). We agree with *Boersma* and do not believe that the word "levy" in 42 U.S.C. sec. 407(a) applies to the imposition of a tax. We hold, therefore, that the prohibition in 42 U.S.C. sec. 407(a) does not apply to Missouri's authority to tax Social Security benefits.

#### D.

Next, the Carters directly challenge the validity of 26 U.S.C. sec. 86(b) which includes tax-exempt interest in the calculation of appellants' taxable Social Security benefits. Section 86(a) defines "gross income for the taxable year" to include the lesser of "one-half of the social security benefits received during the taxable year"

or "one-half of the excess described in subsection (b)(1)." Section 86(b)(1)(A) requires the taxpayer to include "modified adjusted gross income" in the calculation to determine whether a tax is due. Section 86(b)(2)(A) defines "modified adjusted gross income" to include "interest received or accrued by the taxpayer during the taxable year which is exempt from tax."

The inclusion of tax-exempt interest required by section 86 in determining the threshold for taxation of Social Security benefits caused the Carters to incur income tax on an additional income of $5,907. In effect, the Carters argue, federal law permits the taxation of tax-exempt interest, thereby violating the doctrine of intergovernmental immunity as well as equal protection.

#### 1.

■ The Director initially questions this Court's authority to rule on the validity of a federal statute. Under Mo. Const. art. V, sec. 3, however, this Court has "exclusive appellate jurisdiction in all cases involving the validity of a treaty or statute of the United States." *Swift & Co. v. Doe,* 311 S.W.2d 15, 22 (Mo.), *transferred to* 315 S.W.2d 465 (Mo.App.1958), *cert. denied,* 359 U.S. 911, 79 S.Ct. 587, 3 L.Ed.2d 574, *cert. denied sub nom. Missouri Pacific Ry. Co. v. Doe,* 359 U.S. 915, 79 S.Ct. 589, 3 L.Ed.2d 577 (1959). *See also* 28 U.S.C. 1257 (1988) (authorizing review by United States Supreme Court of any state high court decision questioning the validity of the federal statute.) On the strength of this authority, we believe we may consider the Carters' attack on the federal statute.

#### 2.

■ On the issue of intergovernmental immunity, appellant asserts that 26 U.S.C. sec. 86 allows an impermissible interference with other governmental units, i.e., those issuing tax exempt securities. The argument appears to be that section 86 permits a tax on tax exempt securities issued by state and local governments.

In *Pollock v. Farmers' Loan & Trust Co.,* 157 U.S. 429, 15 S.Ct. 673, 39 L.Ed. 759

(1895), the Supreme Court relied on the Tenth Amendment to apply the doctrine of intergovernmental immunity to attempts by the federal government to tax the states. That case prohibited the federal government from imposing a tax on income derived from municipal bonds. The Court reasoned that such a tax was a tax on the government because the tax burden might be passed on to that government through the bond contract; that is, the state government might face a higher borrowing rate as a result of the tax on the bondholders' income.

*South Carolina v. Baker*, 485 U.S. 505, 524, 108 S.Ct. 1355, 1367, 99 L.Ed.2d 592 (1988), however, noted "the historical fact that Congress has always exempted state bond interest from taxation *by statute.*" [Emphasis added.] *Id.* at 523, 108 S.Ct. at 1366. Expressly overruling *Pollock, Baker* found no constitutional basis for applying the doctrine of intergovernmental tax immunity to an indirect tax on a state, that is, a tax on the income received by persons holding state bonds.

There being only a statutory basis for indirect intergovernmental tax immunity, it follows that Congress retains the power to determine the breadth of that immunity by statute. Here, Congress has determined that interest earned by taxpayers from otherwise tax exempt sources must be included in the formula to determine the level of taxation of Social Security benefits. No constitutional violation is present in that determination.

### 3.

■ The Carters also charge that the statute violates equal protection because it discriminates between taxpayers on Social Security *with* tax-exempt interest and those *without* tax-exempt interest. Again, the Carters cannot here claim discrimination founded on a suspect classification or that infringes a fundamental right. There, the test even for the Congress is the "lenient standard of rationality" described in

*Exxon Corp. v. Eagerton*, 462 U.S. 176, 195, 103 S.Ct. 2296, 2308, 76 L.Ed.2d 497 (1983).

Section 86 intends "to strengthen the Social Security system by requiring 'taxpayers who have a comfortable flow of income' to pay a tax on part of their social security benefits." *Goldin v. Baker*, 809 F.2d 187, 190 (2nd Cir.1987), *quoting* S.Rep. No. 23, 98th Cong., 1st Sess. 25–28, reprinted in 1983 U.S.Code Cong. & Ad. News 143, 166–69. This congressional purpose is rational and is sufficient to defeat the Carters' claim.

### E.

■ Next, the Carters claim that state taxation of Social Security benefits violates the "spirit & purpose" of Mo. Const. art. X, sec. 18. That constitutional provision establishes a limit on "the total amount of taxes which may be imposed by the general assembly in any fiscal year on the taxpayers of this state."

The Carters' brief states that the taxation of Social Security benefits "broadened the income tax base without voter approval." The Missouri Constitution does not require voter approval when the General Assembly broadens the tax base. Art. X, sec. 18, is violated only when total state revenues exceed the revenue limit established in that section. There is no evidence in this record to support the Carters' claim. The point is denied.

### F.

■ The Carters' final point urges that the pegging of Missouri taxpayers' adjusted gross income to the taxpayers' federal adjusted gross income is an unconstitutional delegation of legislative power, citing Mo. Const. art. III, sec. 1.[3] The Carters argue that the legislature cannot simply "sit back" and permit changes "by a U.S. Congress not the least bit concerned with Missouri income tax laws."

We disagree. Mo. Const. art. X, sec. 4(d), expressly permits incorporation of federal law for purposes of Missouri income

---

**3.** Art. III, sec. 1, provides: "The legislative power shall be vested in a senate and house of

representatives to be styled 'The General Assembly of the State of Missouri.'"

taxation: "In enacting any law imposing a tax on or measured by income, the general assembly may define income by reference to provisions of the laws of the United States."

Undaunted, the Carters suggest that the adoption of art. X, sec. 18, rendered art. X, sec. 4(d), inoperative. This contention is apparently based on the ballot notice to the broad tax and spending limitation initiative which presented art. X, sec. 18, and other proposed constitutional amendments to the voters for inclusion in the constitution. Without explanation, that notice cited a conflict between the provisions of art. X, sec. 4(d) and the so-called Hancock Amendment. *Boone County Court v. State*, 631 S.W.2d 321, 328 (Mo. banc 1982) (Bardgett, J., dissenting).

The legal significance of the notice as to the conflict the Carters contend exists in this case escapes us. They present no argument beyond the bare assertion that art. X, sec. 18, prohibits "automatic, accidental changes, for Missouri income tax purposes." As we have previously stated in this opinion, art. X, sec. 18, is offended only to the extent that total state revenues exceeds the revenue limit imposed by art. X, sec. 18(a). The Carters have made no such showing on this record. The point is denied.

### III.

The decision of the Administrative Hearing Commission is affirmed.

All concur.

