### STATE of Missouri, ex rel. the MAY DEPARTMENT STORES COMPANY, Appellant,

v.

### Carl M. KOUPAL, Jr., Respondent.

### No. 74251.

Supreme Court of Missouri,
En Banc.

July 21, 1992.

Rehearing Denied Sept. 22, 1992.

Juan D. Keller, Brenda L. Talent, Lloyd J. Vasquez, Jr., St. Louis, for appellant.

William L. Webster, Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Jefferson City, for respondent.

PRICE, Judge.

The May Department Stores Company (May) appeals the summary judgment granted against it in the circuit court denying May a recalculation of its enterprize zone tax credits (EZ credits) for the tax year ending January 1, 1988. In bringing this appeal, May contests the circuit court's interpretation of § 135.225(8), RSMo 1986,[1] a revenue statute, and as such falls within

---

1. This statute, along with most of the sections dealing with enterprise zones, was rewritten in whole or in part in 1991.

the ambit of this Court's exclusive appellate jurisdiction. Mo. Const. art. V, § 3. We reverse and remand.

## I.

May is a New York corporation with its principal place of business in Missouri. May operates a number of retail department stores in Missouri. In 1987, May completed construction on two new stores in Joplin.[2] The Joplin metropolitan area had been designated as an enterprise zone pursuant to § 135.210, RSMo 1986, by the Director of the Department of Economic Development (Department). By establishing new business facilities within the enterprise zone, May became entitled to certain EZ tax credits.

To qualify for the credits, May had to submit the matter to the Department to calculate and certify to the Director of the Department of Revenue (Director) the amount of EZ credits allowed. For the tax year 1987, May claimed that it was entitled to $398,669 in EZ credits for the two stores. However, the Department limited May's EZ credits to the amount of May's taxable Missouri income that was attributed to the two new stores, $47,032.97.

May challenged the Department's certification of $47,032.97 in EZ credits and claimed the EZ credits should be computed relative to its entire Missouri taxable income and not just its new business facility income. Accordingly, May, on its 1987 corporate tax return, attempted to claim the full amount of $398,669 in EZ credits. The Director of the Department of Revenue rejected this amount and accepted the lesser total certified by the Department of Economic Development. This suit followed.

Before the circuit court, May and the Department both filed motions for summary judgment with accompanying affidavits. After hearing argument on both motions, the circuit court on August 8, 1991, issued its judgment granting the Department's motion. In granting summary judgment, the circuit court held:

Pursuant to § 135.225, RSMo 1986, the enterprize zone credits claimed by [May] for the tax year ending January 30, 1988, are limited to the income tax imposed by Chapter 143 on plaintiff's new business facility income, as defined by § 135.-100(6), RSMo 1986.

May appeals stating that: the circuit court misinterpreted § 135.225(8); the circuit court's interpretation violates May's equal protection rights; and the circuit court erred in holding that the Department was not estopped from denying May the full total of EZ credits allowable. Since we agree with May's first position, we do not address the latter points.

## II.

As a preliminary matter, it is appropriate to note that this case was properly decided upon cross motions for summary judgment. Summary judgment is an integral part of our rules of procedure that can allow for a relatively speedy and inexpensive resolution of disputes. *Wood & Huston Bank v. Malan*, 815 S.W.2d 454, 457 (Mo.App.1991).

## III.

The legal issue presented to this Court for ruling is whether § 135.225(8), RSMo 1986, allows the EZ tax credits for each new business facility to extend to all of the taxpayer's taxable Missouri income, or only to the taxable income generated by the new facility itself. The section provides no express limitation. It reads:

The amount of the credit allowed for each new business facility employee employed within an enterprise zone or investment in a new business facility within an enterprise zone shall not be limited to some portion of the income tax.

The Department, however, argues that the introductory language contained in § 135.-225 refers to "§ 135.100 to § 135.160" and provides that the credits shall be "on the same terms and conditions as specified in those sections." As they relate to the issue at hand, the pertinent portions of § 135.110(2) and (3) are identical and read:

**2.** The number of new jobs created by these two    stores was 258.

... the credit allowed by subsection 1 of this section shall not be limited to some portion of the income tax otherwise imposed ... on such taxpayer's new business facility income for the taxable year for which the credit is allowed ...

As such, the Department contends the limitation contained in § 135.110(2) and (3) should be read into § 135.225(8) restricting the EZ credits to the "taxpayer's new business facility income."

The weakness of the Department's argument, however, is apparent. While § 135.-225(8) specifically includes language stating that the taxpayer's credit "shall not be limited to some portion of the income tax," it does not include the continued language from § 135.110(2) and (3) "on such taxpayer's new business facility income." The absence of this key language cannot be ignored. It compels us to conclude that a different result was intended. Had the legislature intended to limit EZ credits to only new business income, it could have easily inserted the language used in § 135.-110(2) and (3) into § 135.225(8). Alternatively, if the legislature had intended to rely entirely upon the "terms and conditions" of §§ 135.100 to 135.160 as stated in the preamble of § 135.225, subsection (8) need not have been included at all.

The Department further argues that the use of the word "the" in the phrase "some portion of *the* income tax" implies reference to "income tax" as a prior defined term. The Department argues that the word "the" signals that the term "income tax" as used in § 135.225(8) is to have the same meaning as it did in § 135.110(2) and (3), where it was expressly limited by the words "on such taxpayer's new business facility income." This argument misses the mark. Both § 135.110(2) and (3) also refer to "the" income tax, thus begging the question of the previous definition to which they might then refer. Moreover, if the Department were correct, there would have been no need to continue the § 135.110(3) definitional phrase "on such taxpayer's new business facility income," as that phrase would have been implied there just as the Department argues it should be implied in § 135.225(8) by the term "the income tax." A more reasoned conclusion is that the legislature chose to limit the benefits provided in § 135.110(2) and (3) to income produced by the new business facility, while it did not choose to so limit the more generous EZ credit benefit.

■ Finally, the Department argues that a credit should be construed narrowly against the taxpayer and that the Department's interpretation should be given great weight. While both propositions are generally so, they cannot overcome a construction of the statute based upon the plain and simple words used therein.

Here, § 135.225(8) expressly states that the amount of credit allowed "... shall not be limited to some portion of the income tax." While many arguments can be made that these words should be construed with reference to other sections of the revenue statutes, and while many rules of statutory construction can be cited, the cardinal rule of statutory construction is to consider the words in their plain and ordinary meaning. *Union Electric Co. v. Director of Revenue, State of Missouri*, 799 S.W.2d 78, 79 (Mo. banc 1990). By our ruling today, we have done just that. Rather than forcing a construction of § 135.225(8) by implication from language used in other sections of the statute, we hold that the EZ credits "shall not be limited to some portion of the income tax," either by percentage, source of income, or otherwise. Accordingly, the judgment of the circuit court is reversed and the case is remanded for a recalculation of May's EZ credit.

Reversed and remanded.

HOLSTEIN and THOMAS, JJ., and SHANGLER and MONTGOMERY, Special Judges, concur.

SPINDEN, Special Judge, dissents in separate opinion filed.

ROBERTSON, C.J., concurs in opinion of SPINDEN, Special Judge.

COVINGTON and BENTON, JJ., not participating.

PAUL M. SPINDEN, Special Judge, dissenting.

I respectfully dissent. The majority concludes that it is giving the language of § 135.225(8), RSMo 1986, its "plain and ordinary meaning," but, in my opinion, the statute's plain meaning requires that it be construed in relation to § 135.110, RSMo 1986.

### I.

The preamble to § 135.225 instructs that credits given to new business facilities located in an enterprise zone be "on the same terms and conditions specified in [§§ 135.-100 to 135.160]" with the exceptions noted. Hence, when § 135.225(8) mandates that a new business facility located in an enterprise zone be given credit not limited "to some portion of the income tax," one must return to §§ 135.100 to 135.160 to determine what "the income tax" is.

Sections 135.110.2 and .3 explain how the credit is to be figured for a new business facility—one not located in an enterprise zone. The statutes mandate that the credit "shall not be limited to some portion of the income tax otherwise imposed by chapter 143, RSMo, ... on such taxpayer's new business facility income for the taxable year[.]" Section 135.100(6), RSMo 1986, defines the phrase, "new business facility income," as "the Missouri taxable income, as defined in chapter 143, RSMo, derived by the taxpayer from the operation of the new business facility." The statute also instructs how to figure the new business facility income if the taxpayer has income from other Missouri activities in addition to that from the new business facility.

What is clear from these provisions in §§ 135.100 and 135.110 is that the General Assembly did not want new business facility income to be a credit against a taxpayer's entire Missouri income tax. The mandate of § 135.225 that it be construed "on the same terms and conditions specified in [§§ 135.100 to 135.160]" requires that the same restriction be applied to a new business facility located in an enterprise zone. The preamble makes clear that the legislature desired that § 135.225 be deemed part and parcel of the entire new business facility provisions set forth in §§ 135.100 to 135.160.

Yet, the majority reasons, "Had the Legislature intended to limit [enterprise zone] credits to only new business income, it could have easily inserted the language used in § 135.110(2) and (3) into § 135.-225(8)." Agreed, but that is precisely what the legislature accomplished in § 135.225's preamble.

The majority counters that reliance on the preamble to restrict construction of § 135.225(8) renders the statute mere surplusage: "[S]ubsection (8) need not have been included at all." This conclusion is compelling until the chronology of the enactments is considered.

As devised in 1980, the General Assembly granted only 50 percent credit for new business facilities. 1980 Mo. Laws 292. In 1982, the General Assembly recognized a special, full credit for new business facilities located in enterprise zones. 1982 Mo. Laws 308. In 1983, the General Assembly amended § 135.110.2 to give 100 percent credit for new business facilities, wherever they were located. 1983 Mo. Laws 408. As the majority recognizes, the 1983 change put all new business facilities on the same par as those in enterprise zones.

The legislature could have repealed § 135.225(8), but it did not. The majority concludes that this single act of not repealing § 135.225(8) is a clear indication that the legislature desired a different interpretation of the statute. The better view, in my opinion, is that § 135.225(8) meant precisely the same after the legislature amended § 135.110 as it did before. "The primary rule of statutory construction requires the Court to ascertain *the intent of the legislature,* considering the words in their plain and ordinary meaning." *Union Electric Company v. Director of Revenue,* 799 S.W.2d 78, 79 (Mo. banc 1990) (emphasis added).

### II.

Because I would affirm the trial court's granting summary judgment, I must not

stop with the statutory construction issue as the majority does. I must further consider the appellant's assertion that the respondent's application of the statute violates its equal protection [1] rights under the United States and Missouri constitutions and that the respondent was estopped from denying the appellant 100 percent credit for its new business facility located in an enterprise zone. I conclude that the appellant's equal protection rights are not violated and that the respondent is not estopped.

### A.

May Department Stores complains that it was denied equal protection of the laws because, as a domestic corporation, Koupal's [2] interpretation of § 135.225 subjected it to a potentially less favorable tax benefit than foreign corporations might enjoy.[3] The equal protection clauses [4] guarantee that similar individuals will be dealt with in a similar manner by the government. These clauses do not forbid the government's making classifications. They guarantee that the government's treatment of distinct groups will not be based on impermissible criteria or arbitrary action—invidious discrimination. *Gregory v. Ashcroft,* —— U.S. ——, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991); *F.S. Royster Guano Company v. Virginia,* 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989 (1920).

When a statute neither creates a suspect classification nor impinges on a fundamental right, it should not be deemed to violate the equal protection clauses unless the statute's classification is totally arbitrary or lacks any legitimate rationality. *Cleburne v. Cleburne Living Center, Inc.,* 473 U.S. 432, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). *Carter v. Director of Revenue,* 805 S.W.2d

154, *cert. denied,* —— U.S. ——, 112 S.Ct. 81, 116 L.Ed.2d 54 (1991). Generally, "legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality." *McGowan v. Maryland,* 366 U.S. 420, 425–26, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961). This standard is especially deferential in the context of tax classifications: "[I]n structuring internal taxation schemes 'the States have large leeway in making classifications and drawing lines which in their judgment produce reasonable systems of taxation.'" *Williams v. Vermont,* 472 U.S. 14, 22, 105 S.Ct. 2465, 2471, 86 L.Ed.2d 11 (1985) (quoting *Lehnhausen v. Lake Shore Auto Parts Co.,* 410 U.S. 356, 359, 93 S.Ct. 1001, 1003, 35 L.Ed.2d 351 (1973)).

Domestic corporations are not in a suspect classification. Nor does operating a new business facility in an enterprise zone constitute a fundamental right. Hence, the appropriate standard of review is whether the difference in treatment between domestic and foreign corporations rationally furthers a legitimate state interest. I conclude that a legitimate rationality supports Koupal's interpretation of § 135.225: to attract into Missouri foreign business interests which have no presence in the state at all, especially into blighted areas not as economically attractive as other areas, and thereby create an additional taxing opportunity. Moreover, domestic corporations have the inner political check of representation in the legislature. Were there no good reason for the distinction drawn by the legislature in favor of foreign corporations, surely the domestic corporations would have the wherewithal to obtain legislative

1. Although May Department Stores cites the federal and state due process clauses and the state constitution's uniformity clauses, it words its argument strictly in equal protection terms: "The Circuit Court's interpretation of § 135.-225(8) results in an unconstitutional application of that provision. Similarly situated taxpayers are treated differently for no legitimate purpose." Hence, I deem it to be raising only an equal protection attack.

2. May Department Stores filed its suit for declaratory judgment against Carl M. Koupal, Jr.,

in his capacity as director of the Department of Economic Development, the agency which administers the enterprise zone credits.

3. May Department Store's assertion is based on a hypothetical it formulated in its brief. It did not establish that the degree of discrimination asserted in the hypothetical has, in fact, occurred.

4. U.S. Const. 14th amend.; Mo. Const. art. I, § 2 (1945).

alleviation. Hence, I do not find a violation of the equal protection clauses.

### B.

May Department Stores then asserts that because the Department of Revenue induced it to locate a new business facility in an enterprise zone with the promise of a credit against its entire state income tax, Koupal should be estopped from not granting the promise. For equitable estoppel to be applied against a government official acting in his official capacity, he must engage in "affirmative misconduct." *Farmers' and Laborers' Co-operative Insurance Association v. Director of Revenue,* 742 S.W.2d 141, 143 (Mo. banc 1987).

May Department Stores complains that the Department of Revenue's tax forms and regulations indicated that it could credit the enterprise zone credit against all of its income tax liability. However, as this court stated in *St. Louis Country Club v. Administrative Hearing Commission,* 657 S.W.2d 614, 616 (Mo. banc 1983), "[T]he incidence of taxes is determined by law, and ... the Director of Revenue and his subordinates have no power to vary the force of a statute.... They cannot ... limit the state's right to collect taxes properly owing." *See also Hearst Corporation v. Director of Revenue,* 779 S.W.2d 557 (Mo. banc 1989).

I do not see any affirmative misconduct by Koupal or the Department of Revenue. At the most, the Department was mistaken about the limits of the enterprise zone credit. Mistaken interpretations must not bar the state's collection of taxes properly owing, and they certainly do not rise to the level of affirmative misconduct.

For these reasons, I am compelled to differ with the majority. I would affirm the trial court's granting summary judgment.